439 Mass. 597 (2003)                                                597

Loyal Order of Moose, Incorporated, Yarmouth Lodge # 2270 *v*. Board of Health of Yarmouth.

LOYAL ORDER OF MOOSE, INCORPORATED, YARMOUTH LODGE
# 2270 *vs*. BOARD OF HEALTH OF YARMOUTH & another.[1]

Barnstable. May 6, 2003. - June 20, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Tobacco Smoke. Practice, Civil*, Preliminary injunction. *Injunction. Administrative Law*, Regulations. *Regulation. Board of Health. Municipal Corporations*, Board of health.

Statement of the standard of review of the denial of an application for a preliminary injunction seeking to enjoin enforcement of a regulation adopted by a municipal board of health. [601-602]

A nonprofit lodge and private corporation (lodge) demonstrated a likelihood of success on the merits of its application for a preliminary injunction to enjoin enforcement of a municipal regulation adopted by a town's board of health prohibiting smoking in "food service establishments" serving the public, where the lodge was only open to lodge members and certain adult guests of members [602]; further, the lodge demonstrated irreparable harm in that both economic and noneconomic harm befell the lodge due to the imposition of the smoking ban [602-603].

CIVIL ACTION commenced in the Superior Court Department on August 5, 2002.

A motion for a preliminary injunction was heard by *Richard F. Connon*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*John J. Twomey* for the plaintiff.

*John C. Creney* for the defendants.

*Cheryl Sbarra & Robert Kline*, for American Cancer Society & others, amici curiae, submitted a brief.

GREANEY, J. The plaintiff (lodge) commenced this action against the defendants, the town of Yarmouth and its board of health (board), seeking declaratory and injunctive relief in connection with the board's enforcement of two municipal regula-

[1]Town of Yarmouth.

tions that prohibited smoking on the lodge's premises and prohibited the lodge from having cookouts. The lodge sought a preliminary injunction enjoining the defendants from enforcing both regulations. A Superior Court judge denied the lodge's request for a preliminary injunction with respect to the regulation prohibiting smoking within its premises. The judge did not rule on the lodge's request for a preliminary injunction with respect to the regulation prohibiting cookouts. The lodge appealed, see G. L. c. 231, § 118, second par., and we granted the lodge's application for direct appellate review. We vacate the order denying the lodge's application for preliminary relief enjoining the defendants from enforcing the regulation prohibiting smoking within the lodge's premises and direct that the requested preliminary injunction enter. We remand the case for action on the lodge's request for a preliminary injunction enjoining the defendants from enforcing the regulation prohibiting the lodge from having cookouts.

1. The background of the case is as follows. The lodge is not licensed as a public establishment, but holds licenses as a nonprofit food service and as a club alcoholic common victualler. The town requires the lodge to have a certificate of inspection from its building department.

In July, 2002, the board informed the lodge that it was no longer going to grant the lodge a variance from, and would impose on the lodge, its municipal regulation that prohibited smoking "in all food service establishments, lounges and bars" (smoking ban regulation). The board had adopted the smoking ban regulation pursuant to G. L. c. 111, § 31: "(1) to protect the public health and welfare by restricting smoking in restaurants; and, (2) to assure smoke free air for nonsmokers; and, (3) to recognize that the need to breathe smoke free air shall have priority over the desire to smoke in an enclosed public area." The regulation defines a "[f]ood [s]ervice [e]stablishment" as follows:

> "An establishment having one (1) or more seats in which food is served to the public that is a covered area and/or located within a permanent structure. A food service establishment is further defined as an establishment

> devoted primarily to serving food for consumption by guests where the consumption of alcoholic beverages is only incidental to the consumption of food."

Violations of the regulation include warnings and monetary assessments and are subject to the town's ordinance on noncriminal dispositions. The board also informed the lodge that it could not have its weekly outdoor barbecue unless it obtained a variance from the board's municipal supplemental food service regulation prohibiting "food service establishments" from "[o]utdoor cooking, preparation, or display of any food product" (outdoor cooking ban regulation), and that a variance, if granted, would permit only one such event.

The lodge brought suit and sought declaratory relief and a preliminary injunction enjoining the defendants from enforcing the two regulations. Among other contentions, the lodge noted its private nature and questioned the applicability of the regulations to an organization that did not appear to be a "food service establishment."

The lodge is a nonprofit, private corporation, owned by its membership,[2] and is not open to the public. The lodge's purposes include uniting its membership in the bonds of fraternity, benevolence, and charity; assisting members and their families in times of need; rendering particular service to orphaned and dependent children, aged members and their wives; and furthering the mutual welfare of members and their families. The lodge has 550 members, with an approximate five per cent increase in membership per year. Only adults can be members of the lodge. All of the lodge's employees are lodge members. To enter the lodge, a person must display a membership card. The lodge posts signs and plaques on its entrance doors stating that it is a private organization for "members only," and that a membership card must be displayed on entering.

The only place at the lodge where smoking had been permitted is an area referred to as the "social quarters," that contains a bar. The social quarters holds approximately one hundred

---

[2]Female members of the lodge are referred to as "chapter" members, while male members are referred to as "lodge" members. We include female "chapter" members as lodge members.

people. All lodge members in good standing have access to the social quarters. The doors to the social quarters are locked. Lodge members have key cards to gain entrance, or a lodge employee may admit a member into the social quarters. Only lodge members in good standing possessing valid membership cards are allowed to make purchases at the lodge, including purchases in the social quarters, upon displaying a membership card.

Certain "qualified guest[s]" are permitted entry into the social quarters. They include: (1) "[a] good standing lodge . . . member's immediate family"; (2) "[t]he lady [or gentlemen] friend of a good standing lodge member"; and (3) "[a] prospective member of the lodge" in certain circumstances. Children are not allowed in the social quarters. It is not clear whether, during the lodge's annual pool league game, members of the opposing team, who are treated as guests of the members of the lodge's team, are permitted entry into the social quarters.[3]

In its complaint, the lodge alleges that, unless the smoking ban regulation is enjoined, the lodge will "suffer substantial, immediate and irreparable harm and damages." In support of this claim, the lodge submitted affidavits of its administrator, whose duties include keeping the lodge's records, and serving as the social quarters's manager. The lodge administrator states that the majority of members who frequent the social quarters are retired senior citizens. The lodge administrator also states that "[t]he loss of [the retired senior citizens'] ability to smoke in the social quarters will interfere with their existing social relationships at the lodge and will cause them irreparable harm and is likely to result in a loss of membership." Since the enforcement of the smoking ban regulation, the lodge administrator asserts that there has been a decline in attendance in the social quarters, and he notes that the social quarters has "suffered a loss of approximately forty-two [per cent] in cash receipts . . . which will necessitate a cut back in . . . hours of operation and layoff of personnel." The lodge administrator also maintains that the "loss of attendance in the [l]odge's [s]ocial

---

[3]The members of the opposing team are not permitted to make purchases at the lodge, but the record is silent as to whether these individuals are allowed into the social quarters.

[q]uarters thwarts the [l]odge's ability to promote [its] social purposes . . . among its membership."

As has been noted, the judge addressed only the lodge's request for a preliminary injunction with respect to the smoking ban regulation. In denying that request, the judge observed that in *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable*, 433 Mass. 217 (2001), a town was not preempted from enacting a regulation imposing a complete ban on smoking in all food service establishments, and he concluded that "[t]he implementation of a smoking ban is under the circumstances of this case a reasonable health regulation pursuant to G. L. c. 111, § 31, and is not an invasion of privacy . . . ." Relying on the *Tri-Nel Mgt., Inc.* case, the judge also stated that "any regulation by the [b]oard of [h]ealth that may cause a loss of membership or would otherwise interfere with existing customer relationships and cause a loss of business income, is not sufficient to support the irreparable harm to support an injunction against the [t]own unless the loss threatened the very existence of [the] plaintiff's business."

2. In deciding whether the lodge met its burden to obtain a preliminary injunction, the judge properly considered the familiar standards set forth in *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609 (1980), and *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79 (1984). "[W]e must look to the same factors properly considered by the judge in the first instance." *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 615-616. Those factors require the party seeking the preliminary injunction to show "(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction." *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 219. When a party seeks to enjoin governmental action, a judge is also "required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." *Commonwealth* v. *Mass. CRINC, supra* at 89. When, as is the case here, an order was "predicated solely on documentary

evidence[,] we may draw our own conclusions from the record." *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 616.

The law grants local boards of health, acting under G. L. c. 111, § 31, considerable authority to regulate matters of general health by adopting reasonable health regulations, *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 220, 222, and permits "municipal regulation of tobacco products" "as a legitimate municipal health concern," *id.* at 222, and cases cited. Nothing in G. L. c. 270, § 22, inserted by St. 1987, c. 759, § 3, which prohibits smoking in certain *public* places, "prevent[s] municipalities from regulating smoking more strictly in *public* places" (emphasis added). *Id.* at 224. In relying on *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra*, in support of the denial of the lodge's request for a preliminary injunction, the judge overlooked the important fact that the restaurant involved in that case was not private, but rather, was open to the public.

Also not fully considered by the judge is the equally important fact that the smoking ban regulation applies, by reason of its definition of a "[f]ood [s]ervice [e]stablishment," only to *public* establishments. The record does not convincingly demonstrate that the limited area of the lodge where smoking is permitted, the social quarters, is open to the public. Rather, the record tends to show the exact opposite, that the social quarters is open and accessible only to lodge members and certain adult guests of members. A member of the general public is not allowed to make purchases in the social quarters, and indeed is not permitted within the social quarters. Further, a member of the general public could not be employed in the social quarters, because lodge membership is a prerequisite to employment. The lodge has met its burden of establishing a likelihood of success on the merits of its claim that, in enforcing the smoking ban regulation, the board has exceeded its authority because the purported regulation appears inapplicable to the lodge's activities.

The defendants argue that the lodge failed to show irreparable harm because the lodge's claimed loss of business income fell short of threatening "the very existence of the movant's business." *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable,*

*supra* at 228. However, the principle just expressed applies when a party claims "[e]conomic harm alone . . . ." *Id.* at 227. Both noneconomic and economic harm are present here. The harm is not purely economic because the altruistic purposes of the lodge have been compromised in some respects, and members who would normally engage in activities in the social quarters are not using their memberships to do so. Economic harm is present in view of the affidavits of the lodge administrator which, as has been noted, assert a substantial decrease in the revenues of the social quarters and the likelihood that employees will be laid off and the hours of operation diminished. "The preservation of legitimate economic expectations pending the opportunity for trial is a basis for granting preliminary injunctive relief." *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. 20, 29 (1981), and cases cited. Moreover, consideration of preliminary relief requires a balancing of the lodge's likelihood of success on the merits with the harm alleged. As previously found, the lodge has made a strong showing that the smoking ban regulation has no application to its food service operations. It would be quite illogical to deny preliminary relief to a plaintiff who appears to fall outside of the scope of the purported regulation. Finally, there is no indication that the public will be adversely affected if the smoking ban regulation is not enforced until there has been a decision on the merits.

This appears to us to be a case where the status quo should be maintained to minimize the " 'harm that final relief cannot redress' . . . by creating or preserving, in so far as possible, a state of affairs such that after the full trial, a meaningful decision may be rendered for either party." *Packaging Indus. Group, Inc.* v. *Cheney*, *supra* at 616, quoting Leubsdorf, The Standard for Preliminary Injunctions, 91 Harv. L. Rev. 525, 541 (1978). Without derogating from the general principles concerning economic harm stated in the *Tri-Nel Mgt., Inc.* decision (which is a case in its circumstances distinguishable) or the broad authority granted boards of health in this area, we conclude that the preliminary injunction should have entered.

3. The order denying the lodge's request for a preliminary injunction enjoining the defendants from enforcing the smoking ban regulation against the lodge is vacated. The case is

remanded to the Superior Court for (1) the entry of a preliminary injunction enjoining the defendants, until such time that there is a final judgment entered after a trial on the merits or other dispositive action, from enforcing the smoking ban regulation on the lodge; and (2) consideration of, and action on, the lodge's request for a preliminary injunction enjoining the defendants from enforcing the outdoor cooking ban regulation.

*So ordered.*