## Ruth Service *vs.* Newburyport Housing Authority.

No. 04-P-296.

Essex. December 7, 2004. - April 15, 2005.

Present: Armstrong, C.J., Brown, & Berry, JJ.

*Employment,* Termination. *Housing Authority. Civil Service,* Termination of employment. *Public Employment,* Termination. *Public Policy.*

A Superior Court judge properly granted summary judgment in favor of an employer on a terminated employee's claim of a violation of G. L. 149, § 185, the Massachusetts public employee whistleblower statute, where the personnel policy that the employee claimed her supervisor contravened did not constitute a rule or regulation promulgated pursuant to law, and where there could be no reasonable determination that the supervisor's conduct placed the public health or safety at risk. [282-284]

Civil action commenced in the Superior Court Department on October 18, 2002.

The case was heard by *David A. Lowy*, J., on a motion for summary judgment.

*Joseph G. Sandulli* for the plaintiff.

*Peter J. McQuillan* for the defendant.

Brown, J. The plaintiff, Ruth Service, was an employee of the Newburyport Housing Authority (authority) for almost fifteen years. Prior to her termination, she was employed as the authority's rental assistance and systems administrator. Service was terminated by the authority for making false statements against the executive director of the housing authority, Robert Cox.

Upon termination, Service sought and received a hearing pursuant to G. L. c. 31, § 41.[1] The hearing officer held that the

---

[1] Among other things, § 41 of the civil service law, G. L. c. 31, entitles an employee to a hearing before a hearing officer designated by the appointing authority concerning the reason or reasons for the discharge.

termination complied with the personnel policy of the authority. Service then instituted an action in Superior Court against the authority pursuant to G. L. c. 149, § 185, the Massachusetts public employee whistleblower statute (whistleblower statute). She now appeals from a summary judgment in favor of the defendant.

1. *Background.* We review the record on summary judgment in the light most favorable to the plaintiff. See *Costa* v. *Boston Red Sox Baseball Club*, 61 Mass. App. Ct. 299, 300 (2004), and cases cited. On March 6, 2002, Cox allegedly used profane language in a private meeting with an individual on the custodial staff, in violation of the authority's personnel policy. Service was not present at the meeting, nor was she present in the office at the time of the meeting. Her complaint alleged that this incident left the office staff shaken and upset.

On May 2, 2002, Service set up a staff meeting with Cox about the incident. The staff meeting occurred on May 8, 2002. At this staff meeting, Service disclosed to all present that the board of commissioners of the authority, in an executive session of its regular meeting, had not taken any action against Cox for the incident in question. On May 7, 2002, five days after the staff meeting, Cox gave Service a letter suspending her for two days. He stated in the letter that she was not suspended for possessing the information regarding what had occurred at the executive session, but rather for disclosing the information in a manner meant to humiliate him, and to "cast [him] in a negative light, threaten [him] and/or intimidate [him] in front of the staff."

When she received her suspension notice, Service called her husband and told him that she had been suspended. She stated that Cox was outside her office and that she was afraid to leave as he was blocking her way. Cox heard the conversation. It was the content of this conversation that caused Cox to terminate Service, as set forth in the termination notice to Service, where Cox stated, "[y]ou fabricated a situation whereby you began accusing me of preventing you from leaving the office. This is a potentially criminal accusation you knew to be untrue and false. Your conduct was outrageous, unprofessional and indicates you are unable to perform your job duties in a professional manner."

After a hearing pursuant to G. L. c. 31, § 41, Service's termination was upheld. In a written decision, the hearing officer stated that she found "Mr. Cox's statements to be credible and Ms. Service not to be credible. To falsely accuse her supervisor of preventing her from leaving the office is extremely unprofessional and unethical, and warrants termination. . . . I find that the termination of Ms. Service was done in compliance with [G. L. c. 31, § 41,] and the [authority] personnel policy. I find that the termination warranted by the facts as presented. I therefore uphold the decision to terminate Ms. Service's employment effective May 14, 2002." Service then opted not to pursue her rights pursuant to G. L. c. 31, §§ 41-45, and instead filed this action pursuant to G. L. c. 149, § 185(d) and (f).[2]

2. *Discussion.* In her complaint, Service alleged that Cox's profane language contravened the personnel policies of the authority, that her termination after calling to Cox's attention his violation of those policies was in retaliation for her objection, and that her termination thus violated the whistleblower statute. "We are constrained to follow the plain language of a statute when its language is plain and unambiguous and its application would not lead to an absurd result, or contravene the Legislature's clear intent." *Johnson Lumber Co.* v. *Woodscape Homes, Inc.*, 51 Mass. App. Ct. 323, 325 (2001), quoting from *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). See *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 537 (1992) ("It is a well-established canon of construction that, where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning").

_____

[2]Among other things, G. L. c. 149, § 185(d), provides for the filing of claims in Superior Court and for a two-year statute of limitations. Section 185(f) of G. L. c. 149, as inserted by St. 1993, c. 471, provides: "Nothing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other federal or state law or regulation, or under any collective bargaining agreement or employment contract; except that the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under common law."

The pertinent language of G. L. c. 149, § 185, that Service relies upon in support of her argument is as follows:

> "(b) An employer[3] shall not take any retaliatory action against an employee because the employee does any of the following:
>
> ". . .
>
> "(3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment."

Service argues that the protections offered to public employees by the whistleblower statute are broader than the common-law protections to at-will employees. See *Shea* v. *Emmanuel College*, 425 Mass. 761 (1997) (at-will employee entitled to protection for "whistleblowing" where she reported criminal conduct to superiors). Contrast *Mistishen* v. *Falcone Piano Co. Inc.*, 36 Mass. App. Ct. 243, 245-246 (1994) (at-will employee not entitled to "whistleblowing" protections for reporting employer violations of G. L. c. 93A).

Despite Service's argument to the contrary, the common-law protections afforded to a whistleblower are instructive on the breadth of the statute. As in *Shea* v. *Emmanuel College*, *supra* at 762-763, "[t]he distinction of importance is between a discharge for an employee's internal complaint about company policies or the violation of company rules, for which liability may not be imposed, and an internal complaint made about the alleged violation of the criminal law for which we now decide that liability may be imposed." General Laws c. 149, § 185(*b*)(3), provides protection not just for reporting a violation of the criminal law, but also for the reporting of a "violation of a law, or a rule or regulation promulgated pursuant to

---

[3]An employer is defined as "the Commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof." G. L. c. 149, § 185(*a*)(2).

law, or which the employee reasonably believes poses a risk to public health, safety or the environment."

A judge of the Superior Court entered judgment for the authority. We agree and affirm the judgment.[4]

a. *Personnel policy as a rule or regulation of the authority.* The authority conceded that the alleged conduct would be grounds for an action against it, if the public employee whistleblower statute applied. However, the alleged facts, even if true, do not place Service's conduct and resulting termination within the protections afforded by the statute.

Service argues that the authority's personnel policy expressly prohibited the profane language used by Cox in the meeting with another employee. The pertinent personnel policy provision states:

> "Staff are not at any time to use abusive or sexist language, nor engage in inappropriate joking relationships with unwilling individuals. Violation of any of the above will result in disciplinary action. Comments of a sexual or derogatory manner will not be tolerated and are potential grounds for termination as they are disrespectful and create an improper professional environment."

Service asserts that the personnel policy is a rule of the authority that is promulgated pursuant to the authority's statutory authority to promulgate rules and regulations. Thus, when Service objected to Cox's use of profane language, she objected to a behavior that she reasonably believed violated that rule.[5]

She points to G. L. c. 121B, § 11(*m*), in support of her argument that the authority has the statutory authority to promulgate

---

[4]As we conclude that Service's conduct is not protected by the whistleblower statute, we have no occasion to reach any of the various other arguments presented by the parties regarding different elements required by the statute.

[5]The plaintiff's argument is unusual in our employment law cases. A review of the relevant case law establishes that most individuals who have sought damages for wrongful termination have asserted that a personnel policy manual is an employment contract that is enforceable. See, e.g., *Jackson* v. *Action for Boston Community Dev., Inc.,* 403 Mass. 8, 13 (1988) ("on proper proof, a personnel manual can be shown to form the basis of an express or an implied contract"); *Ferguson* v. *Host Intl., Inc.,* 53 Mass. App. Ct. 96, 103 (2001).

rules and regulations. Section 11(*m*), as amended by St. 1984, c. 189, § 97, provides that the authority may

> "make, and from time to time amend or repeal, subject to the approval of the [Department of Housing and Community Development], by-laws, rules and regulations, not inconsistent with pertinent rules and regulations of the department to govern its proceedings and effectuate the purposes of this chapter."[6]

Service points to nothing more than this provision to support her argument. There is nothing in the personnel policy manual that would tend to demonstrate that it was promulgated in accordance with this statute. Simply because the authority has the power to promulgate regulations does not render a personnel policy manual such a rule or regulation. Compare *Tinkham* v. *Department of Pub. Welfare*, 11 Mass. App. Ct. 505, 514 (1981). Service's argument fails as matter of law because the manual could not reasonably be construed as a "rule or regulation promulgated pursuant to law."

b. *Conduct not a risk to public health or safety.*[7] Service argues in the alternative that Cox's behavior in the private meeting with the maintenance employee posed a risk to the public health and safety. She points to her answers to interrogatories to establish that she reasonably believed that Cox's "words and actions were a threat to the physical health and an impairment of the mental health of all who heard him and all who learned of what he said and did; . . . Cox's words and actions were a present and continuing threat to the safety of all who heard him and all who learned of what he said and did."

Public health is defined as "[t]he health of the community at large . . . [t]he healthful or sanitary condition of the general body of people or the community en masse; esp[ecially] the

---

[6] In addition, G. L. c. 121B, § 26, which enumerates the powers of a housing authority, establishes that the authority must enforce the rules and regulations of the Department of Housing and Community Development. All other powers of a housing authority relate to the purchase and development of land and housing within the community.

[7] Service waived any claim that Cox's behavior posed a risk to the environment in both her opposition to the motion for summary judgment and in her answers to interrogatories.

methods of maintaining the health of the community, as by preventive medicine and organized care for the sick." Black's Law Dictionary 737 (8th ed. 2004). Similarly, public safety is defined as "[t]he welfare and protection of the general public, usu[ally] expressed as a governmental responsibility." *Id.* at 1268.

Service's argument here fails, as she urges the court to adopt an interpretation of G. L. c. 149, § 185, that conflicts with the plain and ordinary meaning of the whistleblower statute. *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. at 537. Her argument proceeds along the path that an office dispute may be interpreted as detrimental to the public health as it upset the individuals who were in a position to overhear the dispute. There is nothing here that lends itself to a reasonable determination that the alleged behavior placed the public health or safety at risk.[8]

*Judgment affirmed.*

---

[8]Nor is there occasion (particularly absent a claim by Service) to consider application of the rule that a public employer, like the authority, may not discharge an employee on a basis that infringes the latter's constitutionally protected interest in free speech. See *Pereira* v. *Commissioner of Social Servs.*, 432 Mass. 251, 256 (2000).