310                446 Mass. 310 (2006)

American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol.

AMERICAN LITHUANIAN NATURALIZATION CLUB, ATHOL, MASS., INC., & others[1] vs. BOARD OF HEALTH OF ATHOL & another.[2]

Worcester. November 9, 2005. - March 22, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Tobacco Smoke. Municipal Corporations,* Board of health. *Administrative Law,* Agency's authority, Regulations, Rulemaking. *Constitutional Law,* Vagueness of statute, Privacy, Right to assemble, Freedom of association, Freedom of religion, Taking of property. *Due Process of Law,* Taking of property. *Privacy. Unlawful Interference.*

This court concluded that a town had the authority, pursuant to G. L. c. 111, § 31, to promulgate a regulation that prohibited smoking at all times in the premises of membership associations located within the town, where the stated purpose of the regulation was to protect and improve the public health and welfare, and where there was a rational relationship between the regulation and the public purpose to be achieved [316-319]; further, this court concluded that G. L. c. 270, § 22, the smoke-free workplace law, did not preempt the local regulation [319-322].

This court concluded that a town's regulation, prohibiting smoking at all times in the premises of membership associations located within the town, was not vague or overbroad, insofar as it contained criminal penalties [322-323]; was not an unreasonable, substantial, and serious interference with the right of privacy of the associations and their members [323]; did not infringe on the right of the associations or their members to free assembly under the First Amendment to the United States Constitution [324]; did not infringe on any rights the associations or their members might have under the freedom of religion clause of the Federal or State Constitution [324]; and did not violate the Civil Rights Act, G. L. c. 12, § 11I [325-326]; moreover, neither G. L. c. 111, § 31, nor principles of due process required the town to conduct a hearing or make findings of fact before promulgating the regulation [324-325]; however, this court could not, on the record before it, resolve the question whether the regulation constituted a deprivation of property without adequate compensation, and therefore, this court remanded this question for further proceedings [325].

CIVIL ACTION commenced in the Superior Court Department on December 2, 2004.

[1] Athol Franco-American Naturalization Club, Inc.; and American Legion Post #102, Inc.

[2] Town of Athol.

A motion for injunctive relief was heard by *John S. McCann,* J., on a statement of agreed facts.

The Supreme Judicial Court granted an application for direct appellate review.

*Christopher N. Banthin* (*Mark A. Goldstein* with him) for the defendants.

*Michael J. Tremblay* for the plaintiffs.

*John M. Townsend,* for Boston Public Health Commission, amicus curiae, submitted a brief.

MARSHALL, C.J. We consider in this case whether a town board of health has the authority to promulgate a regulation that prohibits smoking at all times in the premises of membership associations, sometimes referred to as private clubs.[3] We conclude that it does.[4]

The plaintiffs, three membership associations located in the town of Athol (town), challenge a regulation promulgated in November, 2004, by the board of health of Athol (board) prohibiting smoking in the enclosed areas of the premises of Athol membership associations.[5] See Appendix. The board acted pursuant to G. L. c. 111, § 31,[6] and G. L. c. 270, § 22 (*j*), as appearing in St. 2004, c. 137, § 2.[7] In a verified complaint, the plaintiffs sought a judgment declaring that the board had

---

[3]The judge in the Superior Court and the parties refer to the plaintiffs as "private clubs." We use the term "membership associations," which is consistent with the language of the applicable State statute and State and local regulations. See, e.g., G. L. c. 270, § 22 (*a*) and (*c*) (2), as appearing in St. 2004 c. 137, § 2 (concerning smoking on "premises occupied by a membership association"); 105 Code Mass. Regs. § 661.100 (2005) (same); regulation prohibiting smoking in membership associations in Athol (town regulation) (same) (see Appendix).

[4]We acknowledge the amicus brief filed by the Boston Public Health Commission.

[5]The regulation was passed by the board of health of Athol (board) on November 9, 2004, and became effective on December 1, 2004.

[6]General Laws c. 111, § 31, discussed *infra*, provides in relevant part that "[b]oards of health may make reasonable health regulations."

[7]General Laws c. 270, § 22 (*j*), discussed *infra*, provides: "Nothing in this section shall permit smoking in an area in which smoking is or may hereafter be prohibited by law including, without limitation: any other law or ordinance or by-law or any fire, health or safety regulation. Nothing in this section shall preempt further limitation of smoking by the commonwealth or any department, agency or political subdivision of the commonwealth."

exceeded its authority. The plaintiffs also alleged that a conflict of interest existed for one member of the board who voted in favor of the town regulation, rendering the vote null and void. They further alleged various constitutional and statutory claims: the regulation was vague and overbroad, infringed their members' right to privacy in violation of G. L. c. 214, § 1B, unlawfully restricted their freedom of assembly, violated the free exercise of their members' religious beliefs, constituted a governmental taking of property without adequate compensation or due process of law, and constituted a violation of the Civil Rights Act, G. L. c. 12, § 11I.

The plaintiffs moved for a preliminary injunction on the basis of all these claims except the claim under the Civil Rights Act. They additionally argued that G. L. c. 270, § 22, sometimes referred to as the smoke-free workplace law, preempts local restrictions of smoking in the premises of membership associations. At the suggestion of the judge in the Superior Court, who noted that there appeared to be no facts in dispute, the parties submitted the matter for final resolution on a statement of agreed facts.[8]

The judge concluded that the town regulation was "unreasonable, arbitrary and capricious" as applied to "private clubs," exceeded the board's authority under G. L. c. 111, § 31, and was therefore "void and unenforceable." Final judgment entered to that effect, and the judge permanently enjoined the defendants from enforcing the regulation. He stated that he did not need to reach the remaining claims of the plaintiffs.

The defendants appealed, and we granted their application for direct appellate review. We conclude that the board had the authority to promulgate the regulation pursuant to G. L. c. 111, § 31, and that its authority to do so is not preempted by G. L. c. 270, § 22, as rewritten in 2004. We further conclude that the regulation is not vague or overbroad, does not violate the rights of the plaintiffs or their members to privacy under G. L. c. 214,

---

[8] In his memorandum of decision, the judge described the "agreed statement of facts" as those "set forth in the pleadings and the memorandum." We consider as "agreed facts" those contained in the verified complaint and in the parties' submissions in the Superior Court.

§ 1B, to assembly under the United States Constitution, or to the free exercise of religion under the United States Constitution or the Massachusetts Constitution. In addition, the plaintiffs have not established a violation of the Civil Rights Act, G. L. c. 12, § 11I. We remand the claim of deprivation of property without due process or adequate compensation because the town argues that there are insufficient uncontested facts in the record for us to resolve it.

1. *Background.* In 2004, the Legislature rewrote the then-existing antismoking legislation, G. L. c. 270, § 22, substantially expanding the reach of that statute to "protect the health of the employees of the commonwealth." St. 2004, c. 137, preamble. Compare G. L. c. 270, § 22, as appearing in St. 2004, c. 137, § 2, with G. L. c. 270, § 22, as amended through St. 1997, c. 85. The 2004 smoke-free workplace law mandated a "smoke free environment for all employees working in an enclosed workplace." G. L. c. 270, § 22 (*b*) (1). To that end, the 2004 statute "prohibited" smoking in all workplaces, private[9] and public.[10] The 2004 legislation further provided that smoking "*may* be permitted" in nine specifically enumerated "places and circumstances," G. L. c. 270, § 22 (*c*), one of which is

---

[9]General Laws c. 270, § 22 (*b*) (2), provides that smoking is prohibited in all "workplaces, work spaces, common work areas, classrooms, conference and meeting rooms, offices, elevators, hallways, medical facilities, cafeterias, employee lounges, staircases, restrooms, restaurants, cafes, coffee shops, food courts or concessions, supermarkets or retail food outlets, bars, taverns, or in a place where food or drink is sold to the public and consumed on the premise as part of a business required to collect state meals tax on the purchase; or in a train, airplane, theatre, concert hall, exhibition hall, convention center, auditorium, arena, or stadium open to the public; or in a school, college, university, museum, library, health care facility . . . , group child care center, school age . . . camp building, or on premises where activities are licensed under [G. L. c. 10, § 38,] or in or upon any public transportation conveyance or in any airport, train station, bus station, transportation passenger terminal, or enclosed outdoor platform."

[10]General Laws c. 270, § 22 (*b*) (3), prohibits smoking in "the state house or in a public building or in a vehicle or vessel, owned, leased, or otherwise operated by the commonwealth or a political subdivision thereof, or in a space occupied by a state agency or department of the commonwealth which is located in another building, including a private office in a building or space mentioned in this sentence, or at an open meeting of a governmental body . . . or in a courtroom or courthouse," with an exception not relevant here.

314    446 Mass. 310 (2006)

American Lithuanian Naturalization Club, Athol, Mass., Inc. *v.* Board of Health of Athol.

"premises occupied by a membership association"[11] if the premises is owned or under lease for a term of not less than ninety consecutive days by the association, G. L. c. 270, § 22 (*c*) (2) (i) (emphasis added). The statute also provided that smoking is *not* permitted in "an enclosed indoor space" of a membership association during the time the space is "open to the public," "occupied by a non-member who is not an invited guest of a member or an employee of the association," or "rented from the association" for compensation. G. L. c. 270, § 22 (*c*) (2) (i) (A)-(C).

Of further relevance to this litigation is the provision of the 2004 legislation concerning preemption. Specifically, G. L. c. 270, § 22 (*j*), provides:

"Nothing in this section shall permit smoking in an area in which smoking is or may hereafter be prohibited by law including, without limitation: any other law or ordinance or by-law or any fire, health or safety regulation. Nothing in this section shall preempt further limitation of smoking by the commonwealth or any department, agency or political subdivision of the commonwealth."

In the wake of the 2004 legislation, the board promulgated a local antismoking regulation to "protect and improve the public health and welfare by prohibiting smoking in membership associations."[12] The town regulation recites that "conclusive evidence" exists that tobacco smoke "causes cancer, respiratory

___

[11]General Laws c. 270, § 22 (*a*), defines "[m]embership association" to include not-for-profit fraternal organizations, corporations organized under G. L. c. 180, and veterans' organizations chartered by the Congress of the United States that meet certain qualifications and that have been established for, among others, charitable, philanthropic, civic, social, or benevolent purposes. The judge concluded, and the plaintiffs do not challenge, that each is a "membership association" within the meaning of G. L. c. 270, § 22.

[12]It is not clear whether the judge in the Superior Court had before him a copy of the regulation as promulgated. On appeal, it was the defendants' obligation to provide an accurate copy of the regulation in question. See Mass. R. A. P. 16 (f), 365 Mass. 860 (1974) ("If determination of the issues presented requires consideration of . . . regulations . . . or relevant parts thereof, they shall be reproduced in the brief or in an addendum at the end"). The copy submitted was a draft, marked as such, incomplete, unsigned, and containing blank spaces. We rely on the regulation as adopted, provided to this court after argument.

and cardiac diseases" and other diseases and harmful health ef-
fects enumerated in the regulation, notes the harmful effects of
smoking on smokers and nonsmokers alike, states that second-
hand smoke has been classified as a "known human carcinogen"
by the United States Environmental Protection Agency, among
others, and recognizes "the right of those who wish to breathe
smoke free air." The town regulation prohibits smoking at all
times "in the enclosed areas of membership associations, also
known as private clubs," and declares it "unlawful" for any
person having control of such premises to permit a violation of
the regulation. Violation of the regulation "may" result in either
criminal or noncriminal consequences.[13]

Subsequent to the adoption of the town regulation, the Depart-
ment of Public Health (department) promulgated State-wide
antismoking regulations, 105 Code Mass. Regs. §§ 661.000
(2005), to provide standards for the implementation of G. L.
c. 270, § 22. The department's regulations concern, among
other things, smoking in membership associations. See 105
Code Mass. Regs. §§ 661.003 (adopting definition of member-
ship associations utilized in G. L. c. 270, § 22), 661.100.[14] The
department's regulations contain an antipreemption provision
directed to the local regulation of smoking. See 105 Code Mass.
Regs. § 661.001 ("Nothing in [these regulations] shall be
interpreted as limiting or preempting further restrictions on
smoking by any local by-law, ordinance or regulation").

---

[13]Specifically, the town regulation provides that "[a]ny membership as-
sociation, person having control of the premises, or its business agent who
violates any provision of this regulation may be penalized by the non-criminal
method of disposition as provided in [G. L. c. 40, § 21D,] or by filing a
criminal complaint at the appropriate venue." The regulation further provides
for increasing fines for repeat violations.

[14]Title 105 Code Mass. Regs. § 661.100 (2005), entitled "Smoking Restric-
tions in Membership Associations," prohibits smoking in enclosed indoor
spaces of membership associations when the space is open to the public or oc-
cupied by a nonmember who is not a guest. 105 Code Mass. Regs.
§ 661.100(A). The regulation states that smoking "*may* be permitted if the
premises are occupied solely by" members, their invited guests, salaried
employees, and visiting members of an affiliated chapter or branch of a
fraternal lodge organization (emphasis added). § 661.100(B). Finally, smoking
"*may* be permitted in a distinct part of the premises of a membership associa-
tion" under certain conditions designed to ensure that members of the public
or nonmembers who are not guests are not exposed to smoke migrating into
the public area (emphasis added). § 661.100(C).

Shortly after the board promulgated the town regulation, the plaintiffs, the American Lithuanian Naturalization Club, Athol, Mass., Inc. (Lithuanian Club); the Franco-American Naturalization Club, Inc. (Franco-American Club); and the American Legion Post #102, Inc. (American Legion), brought this action challenging the validity of the town regulation. The plaintiffs asserted that they are "private clubs" not generally open to the public and that the board had no authority to prohibit smoking in their premises when the public is excluded and only members are present. We briefly describe the plaintiffs, their organizational structures, and facilities.

Each plaintiff is organized as a charitable corporation under G. L. c. 180,[15] and owns its building. Each has been licensed to serve alcoholic beverages. Only adults are permitted to become members; guests are permitted in each club at any time if accompanied by a member. Members perform all labor at the clubs, including bartending.[16] Although the clubs are "private," all three "regularly" conduct fund raising activities for local charities, consistent with their charters and their mission statements.[17] The premises of all three are also open to the public during "sanctioned" social events. At such times each club prohibits all smoking in all parts of its premises. At all other times the doors to the buildings are locked and signs posted to indicate that only members may enter.

2. *The authority of the board.* We consider first the town's authority to promulgate the regulation pursuant to G. L. c. 111, § 31,[18] before addressing the plaintiffs' claim that any local regulation of smoking in the premises of membership associa-

---

[15]The American Legion is also chartered as a veterans' association by the Congress of the United States.

[16]This is done on a voluntary basis at the American Legion. At the Lithuanian and Franco-American Clubs, members are paid for their labor.

[17]Each plaintiff has adopted a charter and bylaws. All three exist to "unit[e] members in the bonds of fraternity, benevolence and charity; to assist [their] members and their families in times of need; and further the welfare of [their] members and their families." The Franco-American Club and the Lithuanian Club also exist to preserve their respective members' ethnic and cultural heritage. The American Legion aims, among other objectives, to "uphold and defend the Constitution of the United States of America; to maintain law and order; [and], to foster and perpetuate one hundred percent Americanism."

[18]The board also argues that it has the authority to prohibit smoking in

tions is preempted by the 2004 smoke-free workplace law, G. L. c. 270, § 22.

The judge concluded that the board did not have the authority to restrict smoking in "private membership clubs" under G. L. c. 111, § 31, reasoning that membership associations "do not directly affect the public, except in very limited circumstances." He emphasized that the members of the clubs join voluntarily and choose to smoke or join the associations knowing that smoking is permitted, and that no smoking is permitted when the clubs are open to the public. The judge's reading of the statute is unduly restrictive.

We have long recognized that the rule making authority of local boards of health is broad. See *Independence Park, Inc.* v. *Board of Health of Barnstable*, 403 Mass. 477, 480 (1988) (G. L. c. 111, § 31, provides boards of health with "plenary power to promulgate reasonable health regulations that are general in application and take effect prospectively"). See also *Brodbine* v. *Revere*, 182 Mass. 598, 601 (1903) ("the making of rules and regulations for the preservation of the public health has been intrusted to boards of health in towns as well as in cities, and to a State board of health"). Our standard of review of health regulations is settled: they "have a strong presumption of validity," *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable*, 433 Mass. 217, 220 (2001), stand "on the same footing as would a statute," *Padden* v. *West Boylston*, 64 Mass. App. Ct. 120, 124-125 (2005), quoting *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138 (1949), and a reviewing court "must make all rational presumptions in favor of [their] validity." *Padden* v. *West Boylston*, *supra* at 125. A plaintiff challenging a health regulation must prove that the regulation "cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it." *Druzik* v. *Board of Health of Haverhill*, *supra*.

The stated purpose of the health regulation at issue here is "to protect and improve the public health and welfare by prohibiting smoking in membership associations." As noted earlier, the regulation recites the substantial health dangers

membership associations pursuant to G. L. c. 111, § 122. Because of our resolution of its claim under G. L. c. 111, § 31, we need not address this claim.

caused by tobacco smoke to smokers and nonsmokers alike, and recognizes that second-hand smoke has been classified as a "known human carcinogen." See *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 388 n.16 (2004) (taking judicial notice of United States Surgeon General's 2004 report on health consequences of smoking). The plaintiffs acknowledge that smoking, including second-hand smoke, is harmful to health. Their claim is that any regulation of smoking must be limited to places and circumstances in which the general public is invited or present.

The focus of public health is to protect the health of every member of a community. See, e.g., *Service* v. *Newburyport Hous. Auth.*, 63 Mass. App. Ct. 278, 283-284 (2005), quoting Black's Law Dictionary 737 (8th ed. 2004) (public health is "[t]he health of the community at large . . .[;] [t]he healthful or sanitary condition of the general body of people or the community en masse; esp[ecially] the methods of maintaining the health of the community . . ."). Nothing in G. L. c. 111, § 31, or our prior case law warrants a conclusion that members of a community may be protected by health regulations only when they are in a location to which the public has access. Cf. *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 537 (1985) (upholding municipal regulation prohibiting "testing, storage, transportation and disposal, within the city of Cambridge, of [certain] chemical warfare agents"); *Padden* v. *West Boylston, supra* at 124-125 (upholding mandatory sewer connections regulation promulgated by town board of health).[19] The plaintiffs acknowledge that their premises are open to members of the public during fundraisers or when they are rented, and members of the Athol community (among others) are invited as guests to the premises even when the general public is not invited. Even if smoking members choose to disregard the overwhelming evidence of the serious health consequences of smoking, the board rationally could be

---

[19]The plaintiffs also assert that a local board of health may regulate only an issue of local concern, and because smoking is not "a matter of local concern unique to Athol," the board exceeded its authority. There is no basis for this assertion in the absence of an express limitation to that effect on the power of local boards under G. L. c. 111, § 31.

446 Mass. 310 (2006)                                    319

American Lithuanian Naturalization Club, Athol, Mass., Inc. *v.* Board of Health of Athol.

concerned about the exposure of nonsmokers to a "known human carcinogen."

We need not consider in this case whether smoking may be prohibited in a private residence. These membership associations are incorporated in, and receive the benefit of, Massachusetts laws and licenses. The general public has access to the premises from time to time, and nonsmoking members and their guests have access all of the time. Because there is a "rational connection between the regulation and the public purpose to be achieved," *Hamel* v. *Board of Health of Edgartown*, 40 Mass. App. Ct. 420, 423 (1996), the board acted well within its authority pursuant to G. L. c. 111, § 31, in promulgating the town regulation.[20] Cf. *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 221 (given dangers of environmental tobacco smoke, local board of health regulation prohibiting smoking in all food service establishments, lounges, and bars is "within the standard of reasonableness").

3. *Preemption by G. L. c. 270, § 22.* Turning to the 2004 smoke-free workplace law, G. L. c. 270, § 22, the judge concluded that the town regulation was invalid because, in crafting the 2004 statute "to prevent smoking in public buildings and workplaces," the Legislature focused on places "where the *public* would congregate" (emphasis in original). He pointed to the nine places and circumstances "exempted" (in his words) by the Legislature from the outright prohibition mandated by the 2004 statute, including "membership associations." See G. L. c. 270, § 22 (*c*) (2) (ii). The judge reasoned that the Legislature could not have "intended to grant a local [b]oard of [h]ealth that broad an authority over smoking in private

---

[20]The plaintiffs rely on *Loyal Order of Moose, Inc., Yarmouth Lodge #2270* v. *Board of Health of Yarmouth*, 439 Mass. 597 (2003). The antismoking municipal regulation at issue in that case, promulgated before the enactment of the 2004 smoke-free workplace law, prohibited smoking "in all food service establishments, lounges and bars." *Id.* at 598. Because we concluded that the plaintiff lodge did not qualify as a food service establishment under the regulation itself, we enjoined the town's enforcement of the regulation at the lodge. See *id.* at 602-603. In this case, by contrast, the plaintiffs make no claim that the town regulation's definition of "membership association" does not apply to them. See note 11, *supra*. Their reliance on *Loyal Order of Moose, Inc., Yarmouth Lodge #2270* v. *Board of Health of Yarmouth, supra*, is misplaced.

membership clubs." The judge misconstrues the specific language of the statute.

Both the statute, G. L. c. 270, § 22, and its implementing regulations, 105 Code Mass. Regs. §§ 661.000, define places and circumstances in which smoking "*shall* be *prohibited*" (or "no smoking shall be permitted") and other places and circumstances in which smoking "*may* be permitted" (emphasis added). Compare G. L. c. 270, § 22 (*c*) (2) (i), and 105 Code Mass. Regs. § 661.100(A), with G. L. c. 270, § 22 (*c*) (2) (ii), and 105 Code Mass. Regs. § 661.100(B), (C). Neither the statute nor the implementing regulations provides that smoking "*shall* be *permitted*" in any place or circumstance. The enumerated circumstances in which smoking "may" be permitted are not "exempt" from the statute, as the judge ruled.[21] To the contrary, these places and circumstances (including membership associations) "may" be subject to stricter regulations on smoking by municipalities and their boards of health. See G. L. c. 270, § 22 (*j*); 105 Code Mass. Regs. § 661.001. See also *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 226.

There were sound reasons for the Legislature to conclude that further regulation of the nine "places and circumstances" specified in G. L. c. 270, § 22 (*c*) (2) (ii), including the premises of membership associations, was better left to local regulatory entities. The range of membership associations is broad. Some may be employers, subjecting them to the smoke-free workplace statute and regulations. See G. L. c. 270, § 22 (*a*) (defining "[e]mployer" for purposes of statute). Some, but not all, are licensed to sell alcohol. Some, but not all, invite members of the public or guests to their premises. Some, but not all, have members who are both smokers and nonsmokers. Recognizing

---

[21]The judge stated that G. L. c. 270, § 22 (*c*) (2) (i), "exempts membership associations and provides that if the premises is owned and not located in a public building, smoking *is permitted* except in three specific instances" (emphasis added). He also stated that "smoking *is permitted* in the enclosed indoor space of the membership association" under certain circumstances, pursuant to G. L. c. 270, § 22 (*c*) (2) (ii) (emphasis added). This is inconsistent with the language of the statute, which provides that "smoking *may be* permitted" under specified conditions (emphasis added). See G. L. c. 270, § 22 (*c*) (2).

the broad range of membership associations throughout the Commonwealth, the Legislature did not determine that smoking "shall be prohibited" in all such associations; it expressly left it to local boards of health to establish smoking restrictions, should they deem it appropriate. The intention of the Legislature could not be more clear: the language of the statute itself defeats any claim of preemption. See *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 224.

That the 2004 smoke-free workplace law expressly permits further smoking regulation by local authorities does not end our inquiry. A town may not promulgate a regulation that is inconsistent with State law. See art. 2, § 6, of the Amendments to the Massachusetts Constitution, as amended by art. 89 of the Amendments ("Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court . . ."). The plaintiffs argue, and the judge agreed, that the town regulation restricting smoking in membership associations conflicts with the 2004 statute. We see no conflict. "In determining whether a local ordinance or by-law is inconsistent with a State statute, we have given municipalities 'considerable latitude,' requiring a 'sharp conflict' between the ordinance or by-law and the statute before invalidating the local law." *Take Five Vending, Ltd.* v. *Provincetown,* 415 Mass. 741, 744 (1993), quoting *Bloom* v. *Worcester,* 363 Mass. 136, 154 (1973). See *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 223 (applying same reasoning to board of health regulation). Where, as here, the Legislature expressly authorized local action, and where the statute was not "so comprehensive that an inference would be justified that the Legislature intended to preempt the field," *Wendell* v. *Attorney Gen.,* 394 Mass. 518, 524 (1985), a conflict appears only where "the purpose of the statute cannot be achieved in the face of the local [regulation]." *Grace* v. *Brookline,* 379 Mass. 43, 54 (1979).

The purpose of the statute and the town regulation are complementary; the latter merely extends the reach of the former to membership associations. The purpose of the 2004 revision

to G. L. c. 270, § 22, is to "protect the health of the employees of the commonwealth." St. 2004, c. 137, preamble. The purpose of the town regulation is "to protect and improve the public health and welfare by prohibiting smoking in membership associations." The legislative purpose can certainly be achieved "in the face of [the] local [regulation] on the same subject." *Wendell* v. *Attorney Gen., supra.*

4. *Constitutional issues.* As noted earlier, in the Superior Court the plaintiffs submitted all their claims except their claim under the Civil Rights Act, see note 29, *infra.* All questions of law and fact are therefore open to our decision on review. See *Gulf Oil Corp.* v. *Fall River Hous. Auth.,* 364 Mass. 492, 493 (1974). Cf. *Loyal Protective Life Ins. Co.* v. *Massachusetts Indemn. & Life Ins. Co.,* 362 Mass. 484, 485 (1972) (deciding issues of fact and law, on appeal on report of material facts and transcript of evidence). On appeal, the town addresses all but the takings claim. The plaintiffs, however, make no argument concerning their constitutional or conflict claims, noting only that, if this court considers those claims, "in the interests of economy" the plaintiffs "incorporate the arguments made in favor of those claims before the lower court." We "need not pass upon questions or issues not argued in the brief," Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Cf. *Drain* v. *Brookline Sav. Bank,* 327 Mass. 435, 438 (1951) (reliance on errors asserted in trial court not argued on appeal but incorporated in brief by reference is of "no effect"). We nevertheless address the constitutional claims likely to arise in similar challenges to local antismoking regulations.[22] Cf. *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943) (issue "not properly presented for discussion" addressed "in view of the public interest involved and the uncertainty and confusion now existing"). We may dispose of these claims summarily. See *id.*

The town regulation, insofar as it contains criminal penal-

---

[22]In the Superior Court, but not on appeal, the plaintiffs argued that the board's action was void and unenforceable because the vote of one member, Joan E. Hamlett, was tainted by a conflict of interest and therefore invalid under several provisions of G. L. c. 268A. We see no reason to address that claim, Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), which is specific to the particular defendant in this case.

ties,[23] is neither vague nor overbroad. A statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth* v. *Williams,* 395 Mass. 302, 304 (1985), quoting *Kolender* v. *Lawson,* 461 U.S. 352, 357 (1983). The town regulation defines "[m]embership association" with clarity, incorporating the definition that appears in G. L. c. 270, § 22. It also describes in detail the circumstances in which smoking is prohibited.[24] The town regulation is sufficiently explicit to inform the plaintiffs of conduct that could subject them to criminal penalties. See *Commonwealth* v. *Spano,* 414 Mass. 178, 180 (1993) ("criminal statutes [must] be defined in terms that are sufficiently clear to permit a person of average intelligence to comprehend what conduct is prohibited").

The town regulation is not an "unreasonable, substantial and serious interference" with the right of privacy of the associations and their members in violation of G. L. c. 214, § 1B.[25] Because their premises are "locked and not open to the public," the plaintiffs claim that the regulation of activities that occur inside the buildings constitutes an invasion of privacy. The statute does not sound in trespass; it protects the invasion of some personal aspect of an individual, not a location. See, e.g., *Bratt* v. *International Bus. Machs. Corp.,* 392 Mass. 508, 518 (1984) (disclosure of employee's private medical information may constitute violation of privacy under G. L. c. 214, § 1B); *Galdauckas* v. *Interstate Hotels Corp.,* 901 F. Supp. 454, 470 (D. Mass. 1995) (disclosure of plaintiff's age does not constitute serious or unreasonable interference with privacy rights under G. L. c. 214, § 1B).

---

[23]The regulation provides for the filing of a criminal complaint as a possible consequence of its violation.

[24]The plaintiffs argued that a "person of normal intelligence in Athol cannot know in advance whether one can smoke in a particular place or not" because "every square inch of the Town of Athol could be a 'private club' if two or more people gather there, including private residences." The argument is frivolous. "Membership association" is defined in the town regulation as a not-for-profit entity.

[25]General Laws c. 214, § 1B, provides, in pertinent part: "A person shall have a right against unreasonable, substantial or serious interference with his privacy."

The regulation does not infringe the plaintiffs' right to free assembly under the First Amendment to the United States Constitution. The freedom of association encompasses "the right 'to enter into and maintain certain intimate human relationships,' and a right 'to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion.' " *Concord Rod & Gun Club, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 716, 721 (1988), quoting *Roberts* v. *United States Jaycees*, 468 U.S. 609, 617-618 (1984). Although some members "have threatened that they will no longer socialize at the clubs if smoking is not permitted," there has been no showing that enforcement of the town regulation will infringe the members' right to maintain relationships with each other or to engage in First Amendment activities.[26] See *id.*

The free exercise clause of the United States Constitution protects the "freedom to believe and freedom to act," *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 375, cert. denied, 459 U.S. 970 (1982), quoting *Cantwell* v. *Connecticut*, 310 U.S. 296, 303 (1940). Article 2 of the Massachusetts Declaration of Rights protects both religious beliefs and religious practices. See *Attorney Gen.* v. *Desilets*, 418 Mass. 316, 332-333 (1994). There is no claim that "smoking" is any aspect of any "belief" of the association members or that smoking is related to any religious practices that take place on the plaintiffs' premises. See *Attorney Gen.* v. *Bailey, supra.* The town regulation does not infringe any rights the plaintiffs may have under the freedom of religion clause of the Federal or State Constitution.

The plaintiffs claim that the regulation improperly deprives them of their property in violation of the Fourteenth Amendment to the United States Constitution in two respects. Observing that the board is required to publish notice of the regulation

---

[26]The plaintiffs asserted, and we accept as undisputed, that "[a]t their events and social gatherings, [the plaintiff associations] foster and communicate a common system of beliefs and values for members and others to follow, and engage to some extent in religious activities." The regulation does not prevent members from assembling for these purposes. There is no claim that smoking, or the promotion of tobacco products, is central to any expressive activities.

after its adoption, the plaintiffs claim both that the required publication has not "been verified" and that they were deprived of due process because they were not provided with notice before the regulation was promulgated. Second, they claim that the town regulation "severely curtail[s]" their use or enjoyment of their property, without adequately compensating them. The town did not challenge these factual assertions.

With one exception not relevant,[27] neither G. L. c. 111, § 31, nor principles of due process require a hearing or findings to support the exercise of a board of health's rule making authority. See *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 540-541 (1985). The plaintiffs have no basis on which to claim a right to a hearing. See *id.* The board is required to give notice by publication after adoption of a regulation. G. L. c. 111, § 31.[28] While we cannot determine whether the defendants complied with this requirement, the plaintiffs have not alleged that they were harmed in any respect by any failure of the board to publish the town regulation.

The town argues on appeal that whether the town regulation constituted a deprivation of property without adequate compensation cannot be resolved on the record before us. We therefore remand only this aspect of the plaintiffs' takings claim to the Superior Court for further proceedings consistent with this opinion.

Finally, the plaintiffs claim that the defendants violated the Civil Rights Act, G. L. c. 12, § 11I.[29] It is not resolved whether the Civil Rights Act applies to municipalities. Cf. *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 396 (1996) ("Even if we as-

[27]General Laws c. 111, § 31, requires a hearing for regulations or amendments thereto that "relate[] to the minimum requirements for subsurface disposal of sanitary sewage."

[28]General Laws c. 111, § 31, provides, in pertinent part: "A summary which shall describe the substance of any regulation made by a board of health under this chapter shall be published once in a newspaper of general circulation in the city or town, and such publication shall be notice to all persons."

[29]This claim is the only one for which the plaintiffs made no argument in their motion for preliminary injunction. We nevertheless address it because, to the extent that the plaintiffs cannot establish a violation of their constitutional rights, there is no recovery under G. L. c. 12, § 11I.

sume that the Act applies to municipalities . . ."). Even if the Civil Rights Act applies, to succeed in their claim under G. L. c. 12, § 11I, "the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Id.* at 395. With the exception of their takings claim, the plaintiffs have not established that the town regulation interferes with, or attempts to interfere with, any of their constitutional rights. There is no basis for recovery under G. L. c. 12, § 11I.

5. *Conclusion.* We vacate the judgment and remand the case to the Superior Court for consideration of the plaintiffs' claim that the town regulation constitutes a deprivation of property without adequate compensation.

*So ordered.*

APPENDIX.

*REGULATION PROHIBITING SMOKING IN MEMBERSHIP*
*ASSOCIATIONS IN ATHOL*

"A. Statement of Purpose:

Whereas conclusive evidence exists that tobacco smoke causes cancer, respiratory and cardiac diseases, negative birth outcomes, irritations to the eyes, nose, and throat; and whereas the harmful effects of tobacco smoke are not confined to smokers but also cause severe discomfort and illness to nonsmokers; and whereas environmental tobacco smoke [hereinafter ETS], which includes both exhaled smoke and the side stream smoke from burning tobacco products, causes the death of 53,000 Americans each year (McGinnis JM, Foege W, 'Actual Causes of Death in the United States', JAMA 1993 270:2207-2212); and whereas the U.S. Environmental Protection Agency classified secondhand smoke as a known human carcinogen and the International Agency for Research on Cancer (IARC) of the World Health Organization also classified secondhand smoke as a known human carcinogen (IARC-WHO, 2002); now, therefore, the Board of Health of the town of Athol recognizes the right of those who wish to breathe smoke free air and establishes this regulation to protect and improve the public health and welfare by prohibiting smoke in membership associations.

"B. Authority: This regulation is promulgated under the authority granted to

the Athol Board of Health under Massachusetts General Laws Chapter 111, Section 31 that 'boards of health may make reasonable health regulations.' It is also promulgated pursuant to Massachusetts General Laws Chapter 270, Section 22(2)(j) which states in part that 'nothing in this section shall permit smoking in an area in which smoking is or may hereafter be prohibited by law including, without limitation: any other law or . . . health . . . regulation. Nothing in this section shall preempt further limitation of smoking by the commonwealth . . . or political subdivision of the commonwealth.' "

"C. Definitions: For the purposes of this regulation, the following words shall have the meanings respectively ascribed to them by this paragraph:

"Business Agent: An individual who has been designated by the owner or operation of any membership association to be the manager or otherwise in charge of said membership association.

"Enclosed: A space bounded by walls, with or without windows or fenestrations, continuous from floor to ceiling and enclosed by one or more doors, including, but not limited to, an office, function room or hallway.

"Membership association (also known as a private club): A not-for-profit entity that has been established and operates, for a charitable, philanthropic, civic, social, benevolent, educational, religious, athletic, recreation or similar purpose, and is comprised of members who collectively belong to: (i) a society, organization or association of a fraternal nature that operates under the lodge system, and having one or more affiliated chapters or branches incorporated in any state; or (ii) a corporation organized under chapter 180; or (iii) an established religious place of worship or instruction in the commonwealth whose real or personal property is exempt from taxation; or (iv) a veterans' organization incorporated or chartered by Congress of the United States, or otherwise, having one or more affiliated chapters by the Congress of the United States, or otherwise, having one or more affiliated chapters or branches incorporated in any state. Except for a religious place of worship or instruction, an entity shall not be a membership association for the purpose of this definition, unless individual membership containing not less than full membership costs and benefits is required for all members of the association for a period of not less than 90 days.

"Person: Any individual, firm, partnership, association, corporation, company or organization of any kind including, but not limited to an owner, operator, manager, proprietor or person in charge of any building, establishment, business, or restaurant or retail store, or the business agents or designees of any of the foregoing.

" 'Smoking' or 'smoke', the lighting of a cigar, cigarette, pipe or other tobacco product or processing a lighted cigar, cigarette, pipe or other tobacco or non-tobacco product designed to be combusted and inhaled.

"D. Smoking Prohibited:

"1. Smoking is prohibited in the enclosed areas of membership associations, also known as private clubs.

"2. It shall be unlawful for any person having control of the premises upon which smoking is prohibited by this regulation, or the business agent or designee of such membership association, to permit a violation of this regulation.

"3. Smoking is prohibited within eight feet of any entrance to any workplace.

"E. Posting Notice of Prohibition:

"Every membership association in which smoking is prohibited by and under the authority of this regulation shall conspicuously display in the premises 'No smoking' signs provided by the Massachusetts Department of Public Health and available from the Athol Board of Health or the international 'No Smoking' symbol (consisting of a pictorial representation of a burning cigarette enclosed in a red circle with a red bar across it) and comparable in size to the sign provided by the Massachusetts Department of Public Health and available from the Athol Board of Health.

"F. Violations:

"Any membership association, person having control of the premises, or its business agent who violates any provision of this regulation may be penalized by the non-criminal method of disposition as provided in Massachusetts General Laws, Chapter 40, Section 21D or by filing a criminal complaint at the appropriate venue. It shall be the responsibility of the membership association, person having control of the premises, or its business agent to ensure compliance with all sections of this regulation. The violator shall receive:

"1. First violation: a fine of one hundred dollars ($100.00).

"2. Second violation within 24 months of the date of the first violation: a fine of two hundred dollars ($200.00).

"3. Three or more violations within 24 months of the current violation, including the current violation: a fine of three hundred dollars ($300.00).

"G. Enforcement:

"This regulation shall be enforced by the Board of Health and its designees. One method of enforcement may be periodic, unannounced inspections of those establishments subject to this regulation. Any citizen who desires to register a complaint under this regulation may request that the Board of Health initiate an investigation.

"H. Non-Criminal Disposition:

"Whoever violates any provision of this regulation may be penalized by the non-criminal method of disposition as provided in Massachusetts General Laws, Chapter 40, Section 21D or by filing a criminal complaint at the appropriate venue.

"Each day on which any violation exists shall be deemed to be a separate offense.

"Penalty:   $100 for the first offense.

           $200 for the second offense within 24 months of the date of the first violation.

           $300 for the third or subsequent offense within 24 months of the current violation, including the current violation.

"Enforcing Persons: Athol Board of Health and its designees

"I. Severability:

"If any paragraph or provision of this regulation is found to be illegal or against public policy or unconstitutional, it shall not affect the legality of any remaining paragraphs or provisions.

"J. Conflict with Other Laws or Regulations:

"Notwithstanding the provisions of the foregoing Paragraph D of this regulation nothing in this regulation shall be deemed to amend or repeal applicable fire, health or other regulations so as to permit smoking in areas where it is prohibited by such fire, health or other regulations.

"K. Effective Date:

"This regulation shall be effective on Dec 1, 2004.

"Passed on the 9th day of November in the year 2004."