**FRATERNAL ORDER OF EAGLES, Juneau–Douglas Aerie 4200, Mark Page, Brian Turner, R.D. Truax, and Larry Paul, Appellants,**

v.

**CITY AND BOROUGH OF JUNEAU, Appellee.**

No. S–13748.

Supreme Court of Alaska.

July 1, 2011.

---

**39.** AS 23.30.127(a).

**40.** AS 23.30.127(c).

Paul H. Grant, Law Office of Paul H. Grant, Juneau, for Appellants.

John W. Hartle, City Attorney, Juneau, for Appellee.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Amicus Curiae American Cancer Society Cancer Action Network.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

The City and Borough of Juneau has an ordinance that prohibits smoking in certain places. In March 2008 the City Assembly amended that ordinance to prohibit smoking in "private clubs" that offer food or alcoholic beverages for sale. The Fraternal Order of Eagles, Juneau–Douglas Aerie 4200 and three of its members challenged the ban on smoking in private clubs both on its face and as applied to their Aerie facility. The Eagles argued that the prohibition on smoking in private clubs violates both their First Amendment rights under the United States Constitution and their privacy rights under the Alaska Constitution. We conclude that the ban on smoking in private clubs is a regulation of conduct that does not implicate the freedom of association under the First Amendment to the United States Constitution and that the ban on smoking in private clubs does not violate the Eagles' right to privacy under article I, section 22 of the Alaska Constitution. We therefore affirm the superior court's order granting the City and Borough of Juneau's motion for summary judgment.

## II. FACTS AND PROCEEDINGS

In October 2001 the City and Borough of Juneau (the City) adopted the first version of its "Smoking in Public Places Code," City and Borough of Juneau Code (CBJ) 36.60. The City Assembly found that "in order to protect the public health it is necessary to control the amount of tobacco smoke in public places." The City Assembly also included in its findings the conclusions of a 1992 report published by the United States Environmental Protection Agency, titled *Respiratory Health Effects of Passive Smoking: Lung Cancer and Other Disorders,* that outlined the dangers of second-hand smoke, including increased risks for lung cancer and coronary heart disease among nonsmokers, increased risk of death from lung cancer and coronary heart disease, respiratory problems in children, and lower respiratory tract infections.

Since 2001 the City's anti-smoking ordinance has been amended several times. Originally it exempted "enclosed areas used for conferences or meetings in restaurants, service clubs, hotels, or motels while the spaces are in use for private functions" as well as "bars and bar restaurants." In 2004 it was amended to ban smoking in "bar restaurants" effective January 2, 2005, and to ban smoking in "bars" effective January 2, 2008. In 2007 it was amended to prohibit smoking and the use of smokeless tobacco products at several public and private medical facilities, including the public streets and sidewalks adjacent to those facilities.[1] Later that year it was also amended to prohibit smoking in bus passenger shelters.

But the ban on smoking in "bars" and "bar restaurants" did not include private clubs until 2008, when a concern was raised that private clubs selling food or alcohol had an unfair business advantage. In response the City Assembly directed the City Attorney to prepare a new amendment to the ordinance that would "clearly prohibit smoking in all places where either alcoholic beverages or food are offered for sale." In March 2008 the City Assembly adopted the amendment to the ordinance now at issue in this appeal. This amendment made several changes to the ordinance, including changing the name from the "Smoking in Public Places Code" to the "Second–Hand Smoke Control Code" and eliminating the exception for smoking in retail tobacco stores. The amended ordinance

---

**1.** The prohibitions on smokeless tobacco appear only in the provisions regulating medical facilities and are not at issue in this appeal. CBJ 36.60.010(b) (2008).

broadened the definition of a "bar"; eliminated the exception to the smoking ban for "private functions"; and specifically prohibited smoking in private clubs that offer food or alcoholic beverages for sale, regardless of the number of employees.[2]

The Fraternal Order of Eagles, Juneau–Douglas Aerie 4200 is a private non-profit charitable corporation organized under the laws of the State of Alaska. Aerie 4200 is a local chapter of the international organization known as the Fraternal Order of Eagles. Aerie 4200 has 262 full members, including both men and women, and 134 ladies auxiliary members. Members pay a $15 initiation fee and $35 in annual dues. New members must be approved by a unanimous vote of the existing members. All members must subscribe to the club rules. The club rules contain an expectation that members will treat the Aerie facility as "an extension of the members' homes" and that the members will have an expectation of privacy while in the facility.

Aerie 4200 holds a license to sell alcoholic beverages in the Aerie facility and is thus subject to Title 4 of the Alaska Statutes, titled "Alcoholic Beverages." Alaska Statute 04.16.010 requires that establishments licensed to sell alcohol, such as the Aerie facility, be closed between 5:00 a.m. and 8:00 a.m. every day. Aerie 4200 employs four part-time bartenders, in addition to a business manager who also serves as a bartender. All five of these employees are members of Aerie 4200 and all five are smokers.[3]

Aerie 4200's activities are "intended to produce a financial base" from which contributions to worthy causes are made. In 2007 Aerie 4200 contributed almost $25,000 to various charities. Aerie 4200 has observed a decline in applications for new membership and estimate that revenues from their Aerie facility have declined 25% since the extension of the smoking ban to private clubs.

The Aerie facility is available only to members, auxiliary members, and their guests. Guests must be signed into the guestbook and sponsored by a member who is present. Each guest is permitted to visit three times before being expected to apply for membership. These requirements are occasionally relaxed in situations such as "providing assistance to people in distress or allowing prospective members to evaluate the club." The Aerie facility is also opened up to the general public four times each year for fundraising events, but no smoking is allowed in the facility during these events. Except on these public occasions, smoking is allowed by a "House Rule" adopted unanimously by Aerie 4200's membership in April 2008.

In July 2008 Aerie 4200 and three of its members (collectively, the Eagles) filed suit against the City, alleging that the portion of the Second–Hand Smoke Control Code that bans smoking in private clubs is unconstitutional both on its face and as applied to Aerie 4200. Specifically, the Eagles claimed that the smoking ban infringed upon their freedom of association under the First Amendment to the United States Constitution and their privacy rights under article I, section 22 of the Alaska Constitution.

Both the Eagles and the City agreed that the case could be resolved as a matter of law on summary judgment. The superior court considered memoranda from both parties as well as an amicus memorandum from the American Cancer Society.[4] The amicus memorandum addressed the legal issues presented but also provided more recent factual information about the dangers of second-hand smoke, including various studies detailing the positive public health effects of anti-smoking ordinances. On October 14, 2009,

---

**2.** For places of employment other than private clubs, the ordinance currently contains an exception to the smoking ban if there are four or fewer employees, unless the place of employment is an "enclosed public place." CBJ 36.60.030(a)(2) (2008).

**3.** According to an affidavit from the Grand Worthy President of Aerie 4200, approximately 85% of Aerie 4200's members are smokers.

**4.** The superior court granted the American Cancer Society's motion for leave to participate as amicus curiae on December 22, 2008. The American Cancer Society also submitted an amicus brief to this court.

the superior court denied the Eagles' motion for summary judgment and granted summary judgment to the City on both the federal association claim and the state privacy claim.[5] The superior court entered final judgment on December 11, 2009. The Eagles appeal.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo while drawing "all factual inferences in favor of, and viewing the facts in the light most favorable to the non-prevailing party."[6] A grant of summary judgment will be affirmed "when there are no genuine issues of material fact, and the prevailing party . . . was entitled to judgment as a matter of law."[7] Here, the parties agreed that the case could be decided on summary judgment and do not contend that there are material facts in dispute. We apply our independent judgment to questions of constitutional law[8] and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

Article X, section 11 of the Alaska Constitution provides home rule municipalities with broad powers: "A home rule borough or city may exercise all legislative powers not prohibited by law or by charter." The Alaska Constitution also requires that "[a] liberal construction shall be given to the powers of local government units."[10] We have made clear that "[a] duly enacted law or

rule, including a municipal ordinance, is presumed to be constitutional"[11] and that "[c]ourts should construe enactments to avoid a finding of unconstitutionality to the extent possible."[12]

## IV. DISCUSSION

**A. The Ban On Smoking In Private Clubs Is A Regulation Of Conduct That Does Not Implicate The Eagles' Freedom Of Association Under The First Amendment To The United States Constitution.**

"The right to associate is a fundamental right protected by the First Amendment and the due process clause of the Fourteenth Amendment."[13] The United States Supreme Court has recognized that individuals have a First Amendment right to associate in two situations: (1) "intimate association," when individuals "enter into and maintain certain intimate human relationships," and (2) "expressive association," when individuals "associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion."[14]

For the Eagles to prevail on their challenge to the City's ban on smoking in private clubs they "must demonstrate that the ordinance infringes on one of these two protected

---

5. The Eagles also raised several other claims in their complaint, including that their right to association under the Alaska Constitution was violated, that the anti-smoking ordinance was preempted by a comprehensive state scheme for regulating alcohol and tobacco, and that the Juneau police have unlawfully intruded into the Aerie facility when seeking to enforce the ban on smoking. In its decision on summary judgment, the superior court requested that the Eagles file a status report indicating whether they were choosing to proceed with these remaining claims. The Eagles filed a Notice Regarding Additional Claims on November 20, 2009, advising the court that they did not intend to pursue these claims.

6. *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005).

7. *Id.*

8. *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.,* 28 P.3d 904, 908 (Alaska 2001).

9. *Alaskans for Efficient Gov't, Inc. v. State,* 153 P.3d 296, 298 (Alaska 2007) (quoting *Sonneman v. State,* 969 P.2d 632, 636 (Alaska 1998)).

10. Alaska Const. art. X, § 1.

11. *Treacy v. Municipality of Anchorage,* 91 P.3d 252, 260 (Alaska 2004).

12. *Id.*

13. *In re Mendel,* 897 P.2d 68, 76 (Alaska 1995) (citing *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)).

14. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

areas of association." [15] The Eagles focus their arguments on the "intimate association" prong.[16] The Eagles argue that (1) the "specific and unique characteristics" of their group and the Aerie facility, such as its small membership and restrictive policies for admitting guests and new members, make the relationships among their members the type of intimate association protected under the First Amendment; and (2) because approximately 85% of their members are smokers, prohibiting smoking in the Aerie facility unduly interferes with those relationships by essentially "telling members to 'go elsewhere.'"

To support this argument the Eagles point to the United States Supreme Court decision in *Roberts v. United States Jaycees,* which held that state human rights legislation requiring the Jaycees to admit women did not abridge the male members' freedom of association.[17] In *Roberts,* the Court noted that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State" because such relationships are "a fundamental element of personal liberty." [18] In order to enjoy this protection, however, a relationship must be "highly personal." [19] Noting that family bonds are the clearest example of such highly personal relationships, the Court explained that relationships "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship" will trigger the protections of the First Amendment.[20] Therefore, "[d]etermining the limits of state authority over an individual's freedom to enter into a particular association ... unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." [21] The Eagles argue that this language requires us to first determine whether Aerie 4200 consists of the type of intimate relationships protected under the freedom to associate.

The City counters that the ordinance does not implicate the freedom of association because it "does not regulate who may associate with whom" but instead only "regulates certain *conduct* in certain places." (Emphasis in original.) The superior court also emphasized the distinction between the cases cited by the Eagles, including *Roberts,* which involve "the regulation of the *membership* of private clubs," and regulations that only pertain to "the *conduct* of members." (Emphasis in original.) As the superior court explained, cases involving the regulation of membership have a direct impact on individuals' choice of whom to associate with, while this case concerns "what people can choose to do while associating." Because of this conclusion, the superior court did not reach the question whether Aerie 4200 consists of intimate relationships possessing the "distinctive characteristics" [22] that would afford heightened constitutional protection.

Numerous state and federal courts have reached similar conclusions when considering First Amendment challenges to ordinances that restrict smoking. As the Washington Supreme Court noted: "Other courts have universally rejected challenges to smoking bans on the grounds they interfere with freedom of association." [23]

**15.** *Taverns For Tots, Inc. v. City of Toledo,* 341 F.Supp.2d 844, 849 (N.D.Ohio 2004).

**16.** While the Eagles maintain that their exercise of expressive (as opposed to intimate) association rights has been "hampered by the ordinance because members have been made to feel unwelcome and have been discouraged from attendance," they admit that "all evidence on this point is anecdotal" and that "any attempt to conclusively link the ordinance with a chilling of [the Eagles'] expressive associational rights is difficult at best."

**17.** 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

**18.** *Id.* at 617–18, 104 S.Ct. 3244.

**19.** *Id.* at 618, 104 S.Ct. 3244.

**20.** *Id.* at 619–20, 104 S.Ct. 3244.

**21.** *Id.* at 620, 104 S.Ct. 3244.

**22.** *See id.* at 621, 104 S.Ct. 3244.

**23.** *Am. Legion Post #149 v. Washington State Dep't of Health,* 164 Wash.2d 570, 192 P.3d 306, 323 (2008); *see, e.g., Players, Inc. v. City of New York,* 371 F.Supp.2d 522, 544–45 (S.D.N.Y.2005); *Taverns for Tots, Inc. v. City of Toledo,* 341

The first group of these cases considered ordinances banning smoking in places of public accommodation such as restaurants or bars. In *NYC C.L.A.S.H., Inc. v. City of New York*, the federal district court rejected the "expressive association" argument that state and city laws prohibiting smoking in bars and restaurants interfered with the rights of smokers to associate while exercising their First Amendment rights.[24] In *C.L.A.S.H.*, a smokers'-rights organization argued that "to bar the act of smoking in all privately owned places that are open to the public deprives smokers of a necessary venue for conducting their private social lives."[25] The federal district court concluded that "[w]hile the Smoking Bans restrict where a person may smoke, it is a far cry to allege that such restrictions unduly interfere with smokers' right to associate freely with whomever they choose" and that "[n]othing in the Constitution engrafts upon First Amendment protections any other collateral social interaction, whether eating, drinking, dancing, gambling, fighting, or smoking."[26] As the *C.L.A.S.H.* court noted, the effect of this " 'association PLUS' theory would be to embellish the First Amendment with extra-constitutional protection for any ancillary practice adherents may seek to entwine around fundamental freedoms, as a consequence of which the government's power to regulate socially or physically harmful activities may be unduly curtailed."[27]

In *Taverns for Tots v. City of Toledo*, a federal district court in Ohio similarly found that an ordinance prohibiting smoking in bars and restaurants, "no matter how applied, cannot infringe on the right of expressive association."[28] That court quoted the opinion in *NYC C.L.A.S.H.* and further explained that the ordinance "do[es] not interfere with the ability of members [of Taverns for Tots] to get together for any lawful purpose, including the exercise of expressive activity. . . . The ordinance only prevents smoking in public places."[29]

Several other decisions, both at the federal and state level, have addressed the direct question whether an ordinance prohibiting smoking in private clubs unconstitutionally interferes with intimate associational rights. In *Players, Inc. v. City of New York*, the federal district court for the Southern District of New York again ruled that New York City's smoking ban was constitutional, even when it banned smoking in a private club "with a long and storied past."[30] The court rejected the club's argument under the intimate association prong, writing:

> [E]ven if Players had not waived the opportunity to present facts in support of its claim to the right of intimate association . . . the Court finds that the Club could not demonstrate that any such right was infringed by the Smoking Bans. Players does not cite to, and the Court cannot locate, any provision of the Smoking Bans or their regulatory schemes that purports to regulate members, or interaction among members, in any clubs covered by the statutes. Smokers' ability to join Players is completely unaffected by the Smoking Bans. At worst, interaction among members could be affected by the laws only incidentally.[31]

With regard to Players' expressive associational rights, the court cited *NYC C.L.A.S.H.* to again reject the club's First Amendment

---

F.Supp.2d 844, 849–53 (N.D.Ohio 2004); *City of Tucson v. Grezaffi*, 200 Ariz. 130, 23 P.3d 675, 681 (Ariz.App.2001); *Am. Lithuanian Naturalization Club v. Board of Health of Athol*, 446 Mass. 310, 844 N.E.2d 231, 242 (2006).

**24.** 315 F.Supp.2d 461, 472–76 (S.D.N.Y.2004).

**25.** *Id.* at 473 (citation omitted).

**26.** *Id.* at 473–74.

**27.** *Id.* at 474.

**28.** 341 F.Supp.2d at 852.

**29.** *Id.* at 851. The federal district court in *Taverns for Tots* also rejected the plaintiff's intimate association claim, but on the basis that the purpose of Taverns for Tots was to evade the anti-smoking ordinance and that such an organization "is not the kind of intimate associational activity that either enjoys or deserves protection under the First Amendment." *Id.* at 850.

**30.** 371 F.Supp.2d 522, 525 (S.D.N.Y.2005).

**31.** *Id.* at 545.

argument.[32]

State courts have also upheld anti-smoking ordinances, even when applied to private clubs. In *American Lithuanian Naturalization Club v. Board of Health of Athol,* the Supreme Judicial Court of Massachusetts upheld a challenge to a smoking ban that prohibited smoking in all enclosed areas of local private clubs.[33] The court rejected the intimate association argument advanced by three private clubs that their members would no longer socialize at their facilities if smoking was banned, holding that there was "no showing that enforcement of the town regulation will infringe the members' right to maintain relationships with each other." [34]

In the closest factual analogy to this case, *American Legion Post # 149 v. Washington State Department of Health,* the Washington Supreme Court considered a challenge to a statute and ordinance prohibiting smoking in any place of employment.[35] Although the Washington Supreme Court considered the relevant factors and determined that American Legion Post # 149 was not an intimate association because of its large membership, the court indicated that there would be no violation of the group's rights even if it had been deemed an intimate association: "Even if the Post were deemed to facilitate intimate human relationships, the ban does not directly interfere with such relationships or a person's ability to join the Post. Instead, it merely prohibits smoking in the Post's building when employees are present." [36]

■ We agree with these other courts that an ordinance banning smoking in private clubs does not implicate the right to intimate association under the First Amendment. Even assuming the Eagles' relationships are of the highly personal type that receive heightened constitutional protection, the ordinance does not regulate or interfere with the members' "choices to enter into and maintain" [37] those relationships. The ordinance does not regulate the membership of Aerie 4200 or who may associate with whom; it only regulates the conduct of members in certain places.

■ The Eagles argue that the ordinance unduly interferes with "how, when, and where club members choose to partake of their intimate associations." The Eagles essentially urge us (1) to adopt the "association plus" theory in spite of the uniform decisions of other courts and (2) to hold that "the right of intimate association includes a right to engage in any lawful activities the participants may choose." But the First Amendment protects the ability to choose one's intimate associates freely, not the ability to engage in any conduct in any place so long as one is interacting with his or her intimate associates. As Judge Pallenberg persuasively explained:

> One could not seriously argue that application of other penal laws, such as the laws against drug possession, theft, sexual contact with minors, or prostitution, to the conduct of members within the confines of a private club infringes upon the members' freedom of association. All such laws regulate the actions of the members, not their choice of the people with whom they associate. In terms of its impact on freedom of association, regulation of smoking as an activity is not different in kind from regulation of these other activities.... People are free to join the Eagles or not; they are just prohibited from smoking inside the club.

Because the smoking ban regulates only conduct, we hold that it does not implicate the freedom of association protected by the First Amendment to the United States Constitution. We do not reach the question whether Aerie 4200 consists of the highly personal relationships that receive heightened protection under the right to intimate association.

---

**32.** *Id.* at 545–46.

**33.** 446 Mass. 310, 844 N.E.2d 231 (2006).

**34.** *Id.* at 242.

**35.** 164 Wash.2d 570, 192 P.3d 306 (2008).

**36.** *Id.* at 323.

**37.** *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

**B. The Ban On Smoking In Private Clubs Does Not Violate The Eagles' Right To Privacy Under Article I, Section 22 Of The Alaska Constitution.**

Article I, section 22 of the Alaska Constitution states that "the right of the people to privacy is recognized and shall not be infringed." We have held that this explicit guarantee of privacy provides Alaskan citizens with greater protection than the federal constitution.[38] But although we have recognized a strong right to personal autonomy and privacy under the Alaska Constitution, we have also clearly stated that "the rights to privacy and liberty are neither absolute nor comprehensive ... their limits depend on a balance of interests" that will vary depending on the importance of the rights infringed.[39] When the state interferes with a fundamental aspect of the right to privacy, the government must demonstrate a "compelling governmental interest and the absence of a less restrictive means to advance that interest."[40] For interference with a non-fundamental aspect of privacy, "the state must show a legitimate interest and a close and substantial relationship between its interest and its chosen means of advancing that interest."[41] Thus, to determine whether the Eagles' right to privacy has been violated, we must first evaluate the nature of the Eagles' rights, if any, that are abridged by the ban on smoking in private clubs, and then consider whether that abridgement is justified.[42]

We have held that two categories of privacy rights are fundamental: those concerning personal autonomy and those protecting a distinctive situs—the home.[43] We have recognized that there is some overlap between these two areas because "the right to privacy in the home is directly linked to a notion of individual autonomy."[44] In this case, the Eagles ask us to hold that there is a fundamental privacy right "to ingest a legal substance—tobacco—in a private club facility." The Eagles argue that the Aerie facility serves as an extension of the members' homes and that the ingestion of tobacco within the Aerie facility should be protected under our decision in *Ravin v. State*, which held that the right to privacy protects the possession by adults of small quantities of marijuana in the home for personal use.[45] The City counters that smoking is not a fundamental right of personal autonomy and that the Aerie facility should not receive the same special protection as the home. The superior court found that the regulation of smoking does not "implicate the fundamental right of personal autonomy" and that the Aerie facility is not the equivalent of a home.

**1. Smoking tobacco is not a fundamental right of personal autonomy.**

We agree with the superior court that, standing alone, smoking tobacco is not a fundamental right of personal autonomy. This conclusion flows directly from our previous cases. Our decision in *Ravin* was firmly rooted in the constitutional protection for privacy in the home, and specifically held that "there is no fundamental right, either under the Alaska or federal constitutions, either to possess or ingest marijuana."[46] Similarly, in *State v. Erickson*, we rejected the argument that the right to privacy protected the use of cocaine within the home and held that "the defendants' particular rights to privacy and autonomy involved cannot be read so as to make the ingestion, sale or

---

38. *Woods & Rohde, Inc. v. State, Dep't of Labor,* 565 P.2d 138, 150 (Alaska 1977).

39. *Sampson v. State,* 31 P.3d 88, 91 (Alaska 2001).

40. *Id.; see State v. Erickson,* 574 P.2d 1, 11–12 (Alaska 1978); *Ravin v. State,* 537 P.2d 494, 497–98 (Alaska 1975).

41. *Sampson,* 31 P.3d at 91.

42. *See Harrison v. State,* 687 P.2d 332, 337 (Alaska App.1984).

43. *See Sampson,* 31 P.3d at 93–94 (describing the holdings in several personal autonomy cases and in *Ravin* ).

44. *Id.* at 94 (citing *Ravin,* 537 P.2d at 503–04).

45. 537 P.2d at 504.

46. *Id.* at 502.

possession of cocaine a fundamental right." [47]

Aerie 4200 argues that these holdings in *Ravin* and *Erickson* are distinguishable because tobacco, unlike marijuana or cocaine, is a legal substance. The court of appeals addressed a similar argument in *Harrison v. State*, which upheld the constitutionality of Alaska's local option law, and concluded that "there is no fundamental right to possess or consume alcohol." [48] We agree with this conclusion of the court of appeals in *Harrison* and conclude that it applies here as well. There is not a fundamental right of personal autonomy under the Alaska Constitution to ingest tobacco.

## 2. The ban on smoking in private clubs does not violate the fundamental right to privacy in the home.

██ In *Ravin*, however, we recognized that we could not dispose of Ravin's privacy claims simply by holding that there was no constitutional right to possess or smoke marijuana. [49] We thus conducted "a more detailed examination of the right to privacy and the relevancy of where the right is exercised." [50] This examination led us to conclude that because of the distinctive nature and importance of the home, Alaskans have a fundamental "right to privacy in their homes." [51] We concluded that this fundamental right to privacy in the home encompassed "the possession and ingestion of substances such as marijuana," subject to two important limitations: First, the use or possession must be limited to "a purely personal, non-commercial context in the home"; and second, the right "must yield when it interferes in a serious manner with the health, safety, rights and privileges of others or with the public welfare." [52]

The Eagles urge us to extend this reasoning to the ingestion of tobacco within their Aerie facility. We decline to do so because the Aerie facility is not a home and because smoking tobacco within the Aerie facility does not occur in "a purely personal, non-commercial context."

Our decision in *Ravin* does not invalidate the ordinance at issue here because a private club is not a home. The Eagles argue that "*Ravin* does not set up a dichotomy between 'homes' and 'everywhere else'" but instead recognizes a spectrum of location-based privacy rights, with possession or ingestion within a private home at one end. [53] Our conclusion in *Ravin*, however, made clear that the right to possess and ingest certain substances encompassed by the right to privacy was strictly limited to a "purely personal, non-commercial context *in the home*." [54] It is the "distinctive nature" of an individual's home that we have recognized as deserving of special protection. [55]

For this reason, the Eagles' arguments that the Aerie facility is "an extension" of the members' homes and "has many attributes of a home" are not persuasive. A home is a private residence. Private clubs, including the Aerie facility, are not homes. The Aerie facility is owned by a non-profit corporation organized under the laws of Alaska; it sells liquor and holds a liquor license that subjects it to the State of Alaska's comprehensive regulations for the sale of alcohol; and it employs five people, including a designated business manager.

Furthermore, when members of Aerie 4200 smoke tobacco in the Aerie facility, they are not ingesting that substance in a "purely personal, non-commercial context." [56] Aerie 4200 could choose not to sell alcohol in the Aerie facility. But Aerie 4200 functions as both a social club and a commercial enterprise that conducts activities "intended to produce a financial base." The fact that Aerie 4200 uses its revenue to support chari-

**47.** 574 P.2d 1, 12 (Alaska 1978).

**48.** 687 P.2d 332, 338 (Alaska App.1984).

**49.** *Ravin,* 537 P.2d at 502.

**50.** *Id.*

**51.** *Id.* at 504.

**52.** *Id.*

**53.** *See Ravin,* 537 P.2d at 502–03.

**54.** *Id.* at 504 (emphasis added).

**55.** *Id.* at 503.

**56.** *Id.* at 504.

table causes does not change the commercial nature of its Aerie facility. Because the Aerie facility is not a home and operates in a commercial context, it does not fall under the privacy protections established in *Ravin.*

### 3. The ban on smoking in private clubs bears a close and substantial relationship to the legitimate state purpose of protecting the public health.

Because the ban on smoking in private clubs does not implicate a fundamental aspect of the right to privacy, we do not evaluate the ban under strict scrutiny. Instead, we apply the less stringent test of whether the City has demonstrated a legitimate interest in protecting the public health and welfare and a close and substantial relationship between that interest and the ban on smoking in private clubs.[57]

The superior court found that "[t]he toll of death and injury caused by consumption of tobacco is not subject to serious dispute," and the amicus brief filed by the American Cancer Society discusses in detail the "harmful effects of exposure to second-hand smoke and the beneficial impact of smoke-free legislation." The Eagles do not dispute these health claims and concede that there is a legitimate state interest in enacting "a broad smoking ban in places where the public may be found, such as bars and restaurants."

The Eagles argue, however, that there is not a close and substantial relationship between protecting the public from the harmful effects of tobacco smoke and banning smoking in their private club. The Eagles emphasize that their club rule allowing smoking was adopted by a unanimous vote; that 85% of Aerie 4200's members, including all five of its employees, are smokers; and that the Aerie facility does not allow smoking when it opens to the general public a few times each year. From the perspective of the Eagles, this demonstrates that the ban on smoking in private clubs has no relationship to the welfare of the "general public," let alone a close and substantial one, but instead applies only to "private and consenting adults." The Eagles essentially claim that they have the right to engage in conduct which harms only themselves.

We rejected a similar argument in *Sampson v. State,* which held that the right to privacy does not include a right to physician-assisted suicide.[58] In *Sampson,* we explained that our cases do not support the argument "that the government may not abridge any aspect of personal privacy unless it involves conduct posing a threat of harm to another."[59] Our decision in *Sampson* also rejected the argument that the state cannot regulate conduct that poses a threat of harm to others if the potential victims consent to the harm.[60] The Supreme Judicial Court of Massachusetts rejected a similar argument in *American Lithuanian Naturalization Club v. Board of Health of Athol,* holding that there was a rational connection between the state's interest in public health and the ban on smoking in private clubs, particularly given the exposure of non-smoking club members to second-hand smoke.[61]

All of Aerie 4200's members, including the smokers and the non-smokers, are harmed by exposure to second-hand smoke in the enclosed space of the Aerie facility. Their consent does not change the analysis of the City's interest in protecting their health. As the superior court observed:

> It is not enough to say that the persons exposed to second-hand smoke have chosen to be in the Eagles Aerie Home. If it were, then no anti-smoking ordinance could be upheld as long as other persons present were there voluntarily. If a workplace, or a bar, or a restaurant is posted as

---

57. *See Sampson v. State,* 31 P.3d 88, 91 (Alaska 2001).

58. 31 P.3d 88.

59. *Id.* at 95; *see also State v. Erickson,* 574 P.2d 1, 21 (1978) ("No one has an absolute right to do things in the privacy of his own home which will affect *himself* or others adversely.") (emphasis added).

60. *Sampson,* 31 P.3d at 95 (finding that "a physician who assists in a suicide undeniably causes harm to others" even with the patient's consent).

61. *See* 446 Mass. 310, 844 N.E.2d 231, 238–39 (2006).

a smoking zone, then everyone present has chosen to be there knowing there is smoke.

The City has a legitimate interest in protecting the public, non-smokers and smokers alike, from the well-established dangers of second-hand tobacco smoke. Aerie 4200 has elected to obtain a state-regulated liquor license and sell alcoholic beverages in its Aerie facility. Establishments that offer alcoholic beverages for sale are likely to be places where members of the public frequently gather. Therefore, the City's decision to ban smoking in any enclosed place that offers food or alcohol for sale, including private clubs, bears a close and substantial relationship to the public health.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's order granting summary judgment to the City and Borough of Juneau.