**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**LESLIE C. SHIVELY**
Shively & Associates, P.C.
Evansville, Indiana

ATTORNEYS FOR APPELLEES:

**ALLYSON R. BREEDEN**
**KEITH W. VONDERAHE**
**ROBERT L. BURKART**
Ziemer Stayman Weitzel & Shoulders, LLP
Evansville, Indiana

**JOHN A. HAMILTON**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| VFW POST 2953, et al, | ) |
| | ) |
| Appellants-Plaintiffs, | ) |
| | ) |
| vs. | ) No. 82A01-1206-PL-255 |
| | ) |
| CITY OF EVANSVILLE AND | ) |
| EVANSVILLE COMMON COUNCIL, | ) |
| | ) |
| Appellees-Defendants. | ) |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82C01-0602-PL-86

**February 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

VFW Post 2953, American Legion Post 265, Owls Nest #30, River City Eagles 4023, VFW Post 1114, Amvets Post 84, Riverbend Association, The Council of Clubs, and Germania Maennechor (collectively, "Fraternal Organizations") sought injunctive relief and a declaratory judgment that City of Evansville Ordinance G-2012-1 Amended violates Article 1, Section 23[1] and Article 1, Section 9 of the Indiana Constitution.[2]  The trial court denied relief and Fraternal Organizations appeal.  We affirm.

**Issues**

Fraternal Organizations present two issues for review:

I.      Whether the trial court erred in finding that the Ordinance did not violate Article 1, Section 23 of the Indiana Constitution; and

II.     Whether the trial court erred in finding that the Ordinance did not violate Article 1, Section 9 of the Indiana Constitution.

**Facts and Procedural History**

---

[1] A group of tavern owners who joined Fraternal Organizations in challenging the Ordinance, including Paul Stieler Enterprises, Inc. d/b/a Harbor Bay, have separately appealed the order and pursued their claim that the Ordinance violates Article 1, Section 23 of the Indiana Constitution, in Cause No. 82A01-1205-CT-242.

[2] In their Amended Complaint, Fraternal Organizations provided a caption identifying one of their counts as alleging a violation of the First Amendment to the United States Constitution.  The First Amendment provides that Congress shall make no law abridging the freedom of speech or the right of the people to peaceably assemble, and has been incorporated into the Fourteenth Amendment and as such applies to all states.  Helton v. State, 624 N.E.2d 499, 505 (Ind. Ct. App. 1993) (citing Near v. Minnesota, 283 U.S. 697 (1931)), trans. denied.

The United States Supreme Court has recognized that citizens have a First Amendment right to associate in two situations:  (1) "intimate association," when individuals "enter into and maintain certain intimate human relationships," and (2) "expressive association," when individuals "associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion."  Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984).

In the proceedings below, Fraternal Organizations presented argument and authority relative to First Amendment associational rights.  However, on appeal, Fraternal Organizations claim only a violation of Article 1, Section 23 and Article 1, Section 9 of the Indiana Constitution.

In 2006, the Evansville Common Council ("the Council") adopted an ordinance that prohibited smoking in workplaces and other public places in the City of Evansville ("the City") but exempted bars, private clubs, and riverboats. On February 13, 2012, the Council adopted City of Evansville Ordinance G-2012-1 Amended, with an effective date of April 1, 2012 ("the Ordinance"). The Ordinance prohibits smoking in bars and private clubs but permits smoking on riverboats.[3] Casino Aztar is the sole riverboat as defined by the Ordinance within the corporate limits of the City.

Fraternal Organizations and a group of tavern owners filed a complaint seeking preliminary and permanent injunctions against enforcement of the Ordinance and additionally seeking a declaration of its unconstitutionality. The City filed a motion to dismiss.

On March 28, 2012, the trial court conducted an evidentiary hearing on the motion for a preliminary injunction. The court heard evidence that Casino Aztar was the only casino meeting the definition of riverboat, most of the patrons came from outside the City, Casino Aztar generated significant income to provide for capital improvements in the City, and Casino Aztar had installed a major ventilation system. The court also heard testimony that Fraternal Organizations had voluntary members with common interests, in some cases functioned as support groups for members, and could expect to lose significant revenue from the extension of the smoking ban to their premises.

On March 30, 2012, the trial court entered its findings of fact, conclusions of law, and

---

[3] The Ordinance defines a riverboat as "a boat on which lawful gambling is authorized pursuant to Indiana Code 4-33, as amended." The surrounding restaurants and bars owned and operated by Casino Aztar are not exempted from the Ordinance.

order denying injunctive relief. The trial court concluded that, although the organizations and taverns had understandable concerns about a negative impact upon their income, which might legitimately be presented in a legislative or political arena, the judiciary could not substitute its opinion for the legislative process, and there was no reasonable likelihood of success in establishing the unconstitutionality of the Ordinance.

On May 15, 2012, the trial court entered a final judgment upholding the Ordinance and denying injunctive relief, incorporating the findings of fact and conclusions of law of the March 30, 2012 order.[4] This appeal ensued.

## Discussion and Decision

### Equal Privileges and Immunities Clause

Fraternal Organizations claim that the Ordinance violates Section 23 of the Indiana Constitution, the Equal Privileges and Immunities Clause, which provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

When a statute is challenged under the Indiana Constitution, it stands "clothed with the presumption of constitutionality until clearly overcome by a contrary showing." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996). The party challenging the constitutionality bears the burden of proof, and all doubts will be resolved against that party. Wallace v. State, 905 N.E.2d 371, 378 (Ind. 2009). Municipal ordinances enacted pursuant to a proper delegation of power are likewise presumptively valid and "stand on the same

---

[4] By agreement, the trial court dismissed Right of Privacy and Due Process claims brought by Tavern Owners.

4

footing as acts of the legislature" when subjected to constitutional scrutiny. City of Indianapolis v. Clint's Wrecker Serv., Inc., 440 N.E.2d 737, 740 (Ind. Ct. App. 1982).

"The requirements of Article 1, § 23 govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." Dvorak v. City of Bloomington, 796 N.E.2d 236, 238 (Ind. 2003). However, "the question of classification under [Section 23] is primarily a question for the legislature" and "legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable." Chaffin v. Nicosia, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974). To overcome the presumption of constitutionality under Section 23, the challenger bears the burden to negate every conceivable basis which might have supported the classification. Mahowald v. State, 719 N.E.2d 421, 425 (Ind. Ct. App. 1999).

A statute may be the subject of a claim under Section 23 when it either grants unequal privileges or imposes unequal burdens. Martin v. Richey, 711 N.E.2d 1273, 1280 (Ind. 1999). The Ordinance extends to Casino Aztar (and any other riverboat to acquire a gaming license) a privilege in the form of an exception to the smoking ban that is unavailable to Fraternal Organizations. Fraternal Organizations claim that the grant of unequal privileges is arbitrary and manifestly unreasonable.

Observing that they, like Casino Aztar, face decreased revenues and have patrons who bear like risks from second-hand smoke, Fraternal Organizations maintain that they are similarly situated to Casino Aztar. According to Fraternal Organizations, the decision to exempt riverboats was necessarily motivated by the City's financial dependence upon casino

5

revenue and this does not provide a rational basis for disparate treatment.

In Collins v. Day, 644 N.E.2d 72 (Ind. 1994), the Indiana Supreme Court "engaged in a comprehensive review of the history and purposes animating the adoption of Section 23 as part of Indiana's 1851 Constitution and of the subsequent case law[.]" League of Women Voters of Ind. v. Rokita, 929 N.E.2d 758, 769 (Ind. 2010). "Synthesizing history, text, and subsequent case law, [the Court] adopted a superseding analytical formulation that, when statutes grant unequal privileges or immunities to differing persons or classes of persons, the Equal Privileges and Immunities Clause imposes two requirements[.]" Id. at 769-70. The formulation provides:

> "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." [Collins, 644 N.E.2d] at 80. In addition, "in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." Id.

Rokita, 929 N.E.2d at 770. Accordingly, Fraternal Organizations bore the requirement of showing (1) that the Ordinance's disparate treatment of riverboats and private clubs is not reasonably related to their distinguishing inherent characteristics, or (2) the exemption accorded riverboats is not uniformly applicable and equally available to all those similarly situated.

The first Collins factor "involves considering both the nature of the characteristics that distinguish the classes and the relationship between the disparate treatment and such characteristics." Rokita, 929 N.E.2d at 770. A statute may result in different treatment for

6

different classifications of people without offending Section 23 if both (a) the disparately treated classifications are rationally distinguished by distinctive, inherent characteristics, and (b) such disparate treatment is reasonably related to such distinguishing characteristics. Id. (citing Ledbetter v. Hunter, 842 N.E.2d 810, 813 (Ind. 2006) and Collins, 644 N.E.2d at 79).

As for the inherent characteristics distinguishing the Fraternal Organizations and Casino Aztar, Fraternal Organizations essentially contend they do not exist. In making this claim, Fraternal Organizations focus only upon the negative financial impact, insisting that they would suffer from a smoking prohibition as much or more than Casino Aztar. There was evidence presented that a ban on smoking would cause Casino Aztar to lose approximately 30% of its revenue. According to Fraternal Organizations, 70 to 80% of their members are smokers and they likewise expect to lose significant revenue.

They do not contest the facts that Casino Aztar tenders $1 of its $3 per patron admittance fee to the City or that Casino Aztar leases property from the City. Thus, revenue generated by Casino Aztar brings revenue for the City of Evansville apart from and in addition to food and beverage taxes. The majority of that revenue is derived from the operation of slot machines. Accordingly, the casino is in direct competition with other casinos but not local clubs, which lack slot machines. Casino Aztar is a major employer in the City.

Moreover, Fraternal Organizations ignore the evidence that Casino Aztar, a large multi-level venue, maintains a non-smoking level and has installed a large and modern

7

ventilation system. Also, approximately 87% of the patrons of Casino Aztar are drawn from areas outside the City.

As to disparate treatment, Fraternal Organizations argue that the purpose of a smoking ban is health protection and thus special treatment to one group of patrons does not further this purpose. However, focus upon a law's "purpose" is not determinative. Rokita, 929 N.E.2d at 770-71. Collins requires only that the disparate treatment accorded by the legislation, not the purposes of the legislation, be reasonably related to the inherent characteristics which distinguish the unequally treated classes. Dvorak, 796 N.E.2d at 239.

According to the evidence and public commentary presented to the Commission, the health risks of second-hand smoke to patrons of either social venue is a valid consideration. However, exact exclusion and inclusion is impractical in legislation. Collins, 644 N.E.2d at 80. "Collins, its precursors, and its progeny all indicate that we look at the Legislature's balancing of the competing interests involved" and we accord considerable deference to the manner in which the legislature has balanced those interests. Humphreys v. Clinic for Women, Inc., 796 N.E.2d 247, 254-56 (Ind. 2003). We must determine whether the challenger has negated every conceivable basis which might have supported the classification. Ledbetter, 842 N.E.2d at 814.

Judicial inquiry is appropriate only where the lines drawn appear to be either arbitrary or manifestly unreasonable, and so long as the classification is based upon substantial distinctions with reference to the subject matter, we do not substitute our judgment for that of the legislature. Collins, 644 N.E.2d at 80. Nor will we inquire into the legislative motives

8

for such classification. Id. Even so, "fiscal considerations are a legitimate basis for legislative line-drawing" and we do not substitute our belief as to the wisdom of a particular statute for that of the Legislature even if a statute was apparently "'born of unwise, undesirable, or ineffectual policies.'" Mahowald, 719 N.E.2d at 426 (quoting State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992)).

Fraternal Organizations and Casino Aztar have different clientele and primary sources of revenue, differing obligations as to payments due to the City from their revenue, and distinct differences in their physical premises. Casino Aztar, a larger venue, has a half-million-dollar ventilation system to partially address the specter of second-hand smoke. Thus, the classifications are rationally distinguished by distinctive, inherent characteristics. Fraternal Organizations did not negate every conceivable basis which might have supported the classification here.

As for the second Collins factor, Fraternal Organizations do not seem to dispute that the preferential treatment (an exemption from the smoking ban) is "uniformly applicable and equally available to all people similarly situated." Collins, 644 N.E.2d at 80. At this time, there are no other riverboats with a gaming license within the corporate limits of the City and the parties appear to be in complete agreement that the exemption from the smoking ban would be applicable to any other riverboat licensed for gaming in the future.

Finally, in determining whether Section 23 is violated, courts are to exercise substantial deference to legislative discretion. Rokita, 929 N.E.2d at 772 (citing Collins, 644 N.E.2d at 80). For example, in Rokita, "the possible absence of precise congruity in

9

application to all voters represent[ed] a legitimate exercise of legislative discretion warranting our deference." Id.

Here, it is true that an individual who patronizes Casino Aztar may smoke or may be exposed to second-hand smoke although if he or she chooses to patronize a private club in the City, smoking is banned. Fraternal Organizations observe that smoking in either place impacts patrons' health. Clearly, however, Fraternal Organizations' petition for relief is not targeted toward expanding the ban such that riverboat patrons are free of second-hand smoke. Rather, Fraternal Organizations seek a declaration that the ban is facially unconstitutional. Arguing that there are pervasive and equal health risks of second-hand smoke does not advance this position. Nonetheless, when 87% of riverboat patrons are non-city residents, City legislation has greatly diminished impact on their lifestyle and health choices. In these circumstances, the absence of precise congruity in legislation is entitled to deference.

Fraternal Organizations have not satisfied their substantial burden to demonstrate that the challenged ordinance violates the Equal Privileges and Immunities Clause of the Indiana Constitution.

### Right to Speak Clause[5]

---

[5] The City asserts that Fraternal Organizations lack standing to pursue a Section 9 claim on behalf of individual members, none of whom are a named plaintiff. Relying upon Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977), the City refers to "limited circumstances" when an organization can assert constitutional claims for individuals: (a) members would otherwise have standing to sue in their own right, (b) the interests the organization seeks to protect are germane to the organizations' purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. According to the City, Fraternal Organizations bore the burden of showing no conflict of interest or diversity of views preventing the organizations from effectively representing the membership. In the proceedings below, there was no timely challenge to standing leading to the development of a record regarding the existence or absence of any such circumstances.

10

In the Amended Complaint, Fraternal Organizations alleged that the smoking ban violated the First Amendment of the United States Constitution and Article 1, Section 9 of the Indiana Constitution, the Right to Speak Clause. Fraternal Organizations made no specific claim under Article 1, Section 31 of the Indiana Constitution, which guarantees the right to peaceably assemble.

In argument before the trial court, Fraternal Organizations claimed that the smoking ban constitutes an "encroachment" upon a fundamental right of free association; they urged the trial court to apply a strict scrutiny analysis to the federal constitutional claim and heightened scrutiny to the state constitutional claim. (Tr. 245.) However, Fraternal Organizations provided no authority to suggest a violation of Indiana's Right to Speak Clause. The trial court proceeded to address the First Amendment challenge.

In upholding the Ordinance, the trial court concluded that it regulates conduct, there is no fundamental right to engage in the conduct of smoking, and the smoking ban has only a remote or incidental impact on the rights of Fraternal Organizations members to freely associate. Rejecting Fraternal Organizations' contentions that smoking is a protected activity or that the smoking ban unduly interferes with rights of association, the trial court relied upon the reasoning of <u>Fraternal Order of Eagles v. City and Borough of Juneau</u>, 254 P.3d 348 (Alaska 2011).

The City of Juneau had enacted an ordinance prohibiting smoking in certain places, and the Fraternal Order of Eagles ("Eagles") had argued that the ban infringed upon their freedom of association under the First Amendment to the United States Constitution. <u>Id.</u> at

351. Claiming that 85% of their members smoked, the Eagles argued that there was an undue interference with their right to "intimate association" because the ordinance essentially directed members to go elsewhere to engage in their associations. Id. at 353.

The Eagles Court reviewed cases of other jurisdictions, including a case that it found to be of "the closest factual analogy," Am. Legion Post # 149 v. Wash. State Dep't of Health, 164 Wash.2d 570, 192 P.3d 306 (2008):

> Although the Washington Supreme Court considered the relevant factors and determined that American Legion Post # 149 was not an intimate association because of its large membership, the court indicated that there would be no violation of the group's rights even if it had been deemed an intimate association: "Even if the Post were deemed to facilitate intimate human relationships, the ban does not directly interfere with such relationships or a person's ability to join the Post. Instead, it merely prohibits smoking in the Post's building when employees are present."

Eagles, 254 P.3d at 355 (quoting Am. Legion Post # 149). The Eagles Court then concluded:

> We agree with these other courts that an ordinance banning smoking in private clubs does not implicate the right to intimate association under the First Amendment. Even assuming the Eagles' relationships are of the highly personal type that receive heightened constitutional protection, the ordinance does not regulate or interfere with the members' "choices to enter into and maintain" those relationships. The ordinance does not regulate the membership of Aerie 4200 or who may associate with whom; it only regulates the conduct of members in certain places.
>
> The Eagles argue that the ordinance unduly interferes with "how, when, and where club members choose to partake of their intimate associations." The Eagles essentially urge us (1) to adopt the "association plus" theory in spite of the uniform decisions of other courts and (2) to hold that "the right of intimate association includes a right to engage in any lawful activities the participants may choose." But the First Amendment protects the ability to choose one's intimate associates freely, not the ability to engage in any conduct in any place so long as one is interacting with his or her intimate associates.

Id. (internal citations omitted).

On appeal, Fraternal Organizations concede that their members lack a fundamental right to smoke "but assert that the smoking ban negatively impacts their constitutionally protected right to free association." Appellant's Brief at 11. Nonetheless, Fraternal Organizations provide no argument directed to a First Amendment claim. Having abandoned any First Amendment claim on appeal, they specifically contend that the Ordinance violates Article 1, Section 9 of the Indiana Constitution, the Right to Speak Clause, which provides:

> No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

"Common in state constitutions, this formulation is sometimes called the 'freedom-and-responsibility standard,'" according to which a legislature may not impair the flow of ideas but is to sanction individuals who commit abuse. Price v. State, 622 N.E.2d 954, 958 (Ind. 1993). "The right to speak clause focuses on the restrictive impact of state action on an individual's expressive activity." Whittington v. State, 669 N.E.2d 1363, 1368 (Ind. 1996). Article 1, Section 9 is implicated when the State imposes a direct and significant burden on a person's opportunity "to speak his or her mind, in whatever manner the speaker deems most appropriate." Id.

Accordingly, "the Indiana Constitution more jealously protects freedom of speech guarantees than does the United States Constitution." Lach v. Lake Cnty, 621 N.E.2d 357, 358 (Ind. Ct. App. 1993), trans. denied. Article 1, Section 9 claims are addressed under a two-step analysis: first, we determine whether the state action has restricted a claimant's expressive activity and second, if it has, we decide whether the claimant's restricted activity

13

constituted an "abuse" of the right to speak. Ogden v. Robertson, 962 N.E.2d 134, 141 (Ind. Ct. App. 2012), trans. denied. The level of scrutiny varies depending upon whether the expressive activity is political or non-political. Blackman v. State, 868 N.E.2d 579, 585 (Ind. Ct. App. 2007), trans. denied. Generally, the State's determination that an expression was an abuse of the right of free speech under the Indiana Constitution need only be found to be rational. Id. However, where the claimant successfully demonstrates that his speech was political (having as its aim to comment on government action), the State must show that it did not materially burden the claimant's opportunity to engage in political expression. Id.

Here, Fraternal Organizations do not point to a particular expression entitled to state constitutional protection. Fraternal Organizations present the following appellate argument:

> The evidence is without dispute that the purpose of the Fraternal Organizations is to provide a facility where veterans can meet and socialize sharing common experiences and essentially acting as a support group. This purpose is accomplished in the bars of said establishments where seventy to eighty percent (70%-80%) of the bar patrons are smokers.
> Undisputed evidence was presented that the smoking ban will reduce the use of the bars by the members thus negatively impacting the purposes of the Fraternal Organizations and impacting negatively the right to free association.
> The legislative history relative to Ordinance G-2012-A Amended contains no evidence justifying an "interest of vital importance justifying said encroachment." Moreover, at trial neither the City nor Council presented any evidence to justify said encroachment.
> The trial court [erred] in concluding that Ordinance G-2012-1 Amended did not violate Article 1 Section 9 of the Indiana Constitution based [on] its determination on [sic] conclusion of law number 55, stating that "there has been no authority cited to this court nor can the court find any authority that smoking is a fundamental right."
> The Fraternal Organizations respectfully assert that the trial court misconstrues the argument of the Fraternal Organizations. The Fraternal Organizations do not assert a fundamental right to smoke but assert that the smoking ban negatively impacts their constitutionally protected right to free association.

14

Appellant's Br. at 10-11. Accordingly, while Fraternal Organizations describe their purpose and in a cursory fashion assert an encroachment upon a right to free association, they stop short of identifying expressive activity restricted by state action or developing a corresponding argument. As best we can discern their argument, Fraternal Organizations contend that the smoking ban unduly interferes with their right of free association by encouraging members to go elsewhere. In other words, they claim an indirect infringement upon associational rights guaranteed by the Indiana Constitution.

Unlike the United States Constitution, the Indiana Constitution contains a separate provision, apart from the Right to Speak Clause, guaranteeing the right to peaceably assemble. Article 1, Section 31 provides:

> No law shall restrain any of the inhabitants of the state from assembling together in a peaceable manner, to consult for their common good; nor from instructing their representative; nor from applying to the General Assembly for redress of grievances.

Nonetheless, Fraternal Organizations have made no claim under Article 1, Section 31, the Rights of Assembly Clause. Moreover, having identified no expressive activity, Fraternal Organizations have failed to satisfy their burden of demonstrating that the Ordinance violates Article 1, Section 9 of the Indiana Constitution.

**Conclusion**

The Fraternal Organizations did not show that the Ordinance violates Article 1, Section 23 or Article 1, Section 9 of the Indiana Constitution. The trial court did not err in denying Fraternal Organizations' request for a declaratory judgment.

15

Affirmed.

VAIDIK, J., and BROWN, J., concur.